874 A.2d 1039

CHRISTINA DIPROSPERO, PLAINTIFF–APPELLANT, v. BARBARA
J. PENN AND MARTHA M. TURNER, DEFENDANTS–RESPON-
DENTS, AND JOHN DOE(S), JOINTLY, SEVERALLY AND/OR
IN THE ALTERNATIVE, DEFENDANT.

Argued November 29, 2004—Decided June 14, 2005.

478

*Franklin P. Solomon* argued the cause for appellant (*Weitz & Luxenberg,* attorneys).

*Susan Stryker* argued the cause for respondents (*Sterns & Weinroth,* attorneys; *Ms. Stryker* and *Mitchell A. Livingston,* on the brief).

*Cynthia M. Craig* argued the cause for *amicus curiae* Trial Attorneys of New Jersey (*Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte,* attorneys).

*Richard Wildstein* argued the cause for *amicus curiae* Association of Trial Lawyers of America–New Jersey (*Goldstein, Ballen, O'Rourke & Wildstein,* attorneys).

*Lewis Stein* argued the cause for *amicus curiae* New Jersey State Bar Association (*Edwin J. McCreedy,* President, attorneys; *Mr. Stein* and *Sharon A. Balsamo,* of counsel).

*Robert Peter Connell* argued the cause for *amicus curiae* Independent Insurance Agents & Brokers of New Jersey (*Connell, Connell & Camassa,* attorneys; *Mr. Connell* and *Michael J. Deem,* on the brief).

*Thomas P. Weidner* argued the cause for *amici curiae* Insurance Council of New Jersey, American Insurance Association and Property Casualty Insurers Association of America (*Windels Marx Lane & Mittendorf,* attorneys; *Mr. Weidner, David F. Swerdlow* and *Antonio J. Casas,* on the brief).

Justice ALBIN delivered the opinion of the Court.

The 1998 Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–1.1 to –35, provides automobile insurance policyholders with a choice: lower premium payments in exchange for limiting their right (and the right of those covered by the policy)

to sue for noneconomic damages if injured in an accident.[1]  That option, known as the "limitation on lawsuit" threshold, restricts an accident victim covered by the policy[2] from suing a defendant for noneconomic damages unless she suffers "a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." *N.J.S.A.* 39:6A–8(a).

The 1988 verbal threshold, the predecessor to the limitation on lawsuit threshold, required the accident victim to prove that her injury satisfied at least one of nine statutory categories in order to qualify for recovery of noneconomic damages. *L.* 1988, *c.* 119, § 6. In *Oswin v. Shaw,* we concluded that under the verbal threshold, in addition to proving that her injury fit within one of the applicable statutory categories, the accident victim had to prove that she suffered a serious life impact. 129 *N.J.* 290, 318, 609 *A.*2d 415 (1992).  AICRA's limitation on lawsuit threshold, which is significantly different from the verbal threshold, has only six categories and does not contain language requiring that an accident victim prove that the injury caused a serious life impact.

█  In this appeal, we must decide whether *Oswin*'s serious life impact standard applies to AICRA's limitation on lawsuit threshold.  The plain language of the statute, a comparative analysis of the old and new lawsuit thresholds, and a survey of AICRA's legislative history persuade us that the Legislature did not intend to engraft the *Oswin* language onto the limitation on lawsuit threshold.  We conclude that an automobile accident victim who is subject to the threshold and sues for noneconomic damages has to

---

[1] " 'Noneconomic loss' means pain, suffering and inconvenience." *N.J.S.A.* 39:6A–2(i).

[2] "The tort option elected shall apply to the named insured and any immediate family member residing in the named insured's household.  'Immediate family member' means the spouse of the named insured and any child of the named insured or spouse residing in the named insured's household...." *N.J.S.A.* 39:6A-8.1(a).

satisfy only one of AICRA's six threshold categories and does not have the additional requirement of proving a serious life impact.

## I.

The trial court granted, and the Appellate Division affirmed, defendant's motion for summary judgment. Accordingly, we review the facts in the light most favorable to plaintiff. *R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

On November 30, 1999, defendant Barbara Penn was driving a pickup truck owned by defendant Martha Turner. At the Route 73 traffic circle in the Borough of Berlin, Penn failed to observe a "yield" sign and crashed into a car operated by plaintiff Christina DiProspero. As a result of the accident, the twenty-one-year-old plaintiff developed back and neck pain. Six days later, plaintiff visited her family physician, Dr. Harris Twersky, who prescribed a treatment plan of stretching and exercise. Plaintiff followed the plan for four months, but her back pain grew progressively worse, and she began to suffer from jaw pain and headaches.

In April 2000, plaintiff consulted with Dr. Steven Scafidi, a chiropractor, who recorded plaintiff's complaints of jaw grinding and of neck, shoulder, and mid- and lower-back pain. Dr. Scafidi x-rayed plaintiff and diagnosed her as having "a TMJ [3] dysfunction" and "a strain/sprain injury that is accompanied by ligamentous instability, myofascitis [4] and localized evidence of nerve root irritation." Plaintiff also underwent magnetic resonance imaging (MRI) scans of her cervical, lumbar, and thoracic spinal areas at MRImaging of South Jersey in Marlton. According to Dr. Scafidi, those scans showed that plaintiff's "discs seem[ed] to be bulging"

---

[3] "Abbreviation for temporomandibular joint *dysfunction.*" *Stedman's Medical Dictionary* 1605 (25th ed. 1990). The temporomandibular joint "relat[es] to the temporal bone and the mandible." *Id.* at 1560. The temporal bone is a "three-part bone[ ] forming the side[ ] and base of the skull." *Webster's II New College Dictionary* 1135 (2001). The mandible is the "lower jaw . . . ." *Id.* at 664.

[4] *"Myositis* fibrosa" is a hardening "of a muscle through an interstitial growth of fibrous tissue." *Stedman's Medical Dictionary, supra,* at 1016, 1018.

in all three spinal areas.[5]   Plaintiff received chiropractic treatment for two years, two to three times each week, until her insurance carrier stopped paying for the visits.

Dr. Scafidi recommended that plaintiff see a TMJ specialist to treat her jaw pain.  In 2000, plaintiff met with Dr. Melvyn Blake, D.D.S., who noted pain, tenderness, spasm, and clicking noises in her jaw.  Dr. Blake prescribed an intra-oral splint and a treatment regimen, which continued for two years until plaintiff's insurance carrier declined to pay for additional visits.

After the accident, plaintiff's lifestyle changed considerably. She had difficulty chewing hard foods and had to reduce her vigorous three-day-a-week regimen at the gym to light workouts three times a month.  She suffered soreness in her back and neck when exercising and endured pain while sitting in her college classes.  Her injuries, however, were not so debilitating that she could not take road trips or help around the house with laundry and dishes.

Plaintiff filed a negligence lawsuit against defendants, seeking damages for, among other things, pain and suffering.  Plaintiff was covered by a no fault insurance policy subject to the limitation on lawsuit threshold under *N.J.S.A.* 39:6A–8(a).  Plaintiff claimed that she suffered permanent injuries to body parts that "ha[d] not healed to function normally and will not heal to function normally with further medical treatment." *N.J.S.A.* 39:6A–8(a).  As required by *N.J.S.A.* 39:6A–8(a), plaintiff submitted certifications by Dr. Scafidi and Dr. Blake attesting to the permanency of the injuries to her cervical, thoracic, and lumbar spine, and her temporomandibular joint.  Both doctors certified that those injuries were proximately caused by the automobile accident.

After the completion of discovery, defendants moved for summary judgment on the ground that there was no evidence that

---

[5] We note that a doctor at MRImaging and a chiropractor at the Rocky Mountain Chiropractic Radiological Center in Colorado both reviewed the MRI scans and found them to be normal.

plaintiff's injuries had a serious impact on her life and, therefore, her suit was barred by the limitation on lawsuit threshold. The trial court agreed and granted the motion.[6]

Plaintiff appealed, arguing that the serious life impact test did not apply to AICRA. In an unpublished *per curiam* opinion with one judge dissenting, the Appellate Division affirmed the grant of summary judgment because plaintiff "failed to establish that the injuries she sustained had a serious impact on her life" in accordance with *Oswin, supra*. The panel followed the reasoning of *James v. Torres*, 354 *N.J.Super.* 586, 588, 808 *A.*2d 873 (App.Div. 2002), *certif. denied*, 175 *N.J.* 547, 816 *A.*2d 1049 (2003), and *Rios v. Szivos*, 354 *N.J.Super.* 578, 580, 808 *A.*2d 868 (App.Div.2002), which held that *Oswin*'s serious life impact prong survived the legislative amendments that resulted in AICRA.

In dissenting, Judge Weissbard adopted the analysis in *Compere v. Collins*, 352 *N.J.Super.* 200, 202–13, 799 *A.*2d 721 (Law Div.2002), in which Judge Lyons concluded that the language and legislative history of AICRA, as well as a comparison of AICRA to its predecessor statute, revealed that *Oswin*'s serious life impact standard did not apply to the limitation on lawsuit threshold. Judge Weissbard found no ambiguity in the plain language of the statute that required delving into legislative history. Finally, Judge Weissbard noted that "[i]f the Legislature failed to effectuate its true intent (whatever that may be), it is for the Legislature, not us, to correct the situation."

Plaintiff appealed as of right based on the dissent in the Appellate Division. *R.* 2:2–1(a)(2). We also granted *amicus curiae* status to the Trial Attorneys of New Jersey, the Association of Trial Lawyers of America–New Jersey, the New Jersey State Bar Association, the Independent Insurance Agents & Brokers of New Jersey, the Insurance Council of New Jersey, the

---

[6] In granting summary judgment, the trial court did not reach the issue of whether plaintiff's injuries were permanent.

American Insurance Association, and the Property Casualty Insurers Association of America. We now reverse.

## II.

This State's more than thirty-year history with no fault insurance has been marked by legislative efforts to control the rising cost of automobile insurance by placing restrictions on an accident victim's right to sue for noneconomic damages. In 1972, the Legislature enacted the " 'New Jersey Automobile Reparation Reform Act,' " *N.J.S.A.* 39:6A–1, commonly referred to as the "No Fault Act." *Caviglia v. Royal Tours of Am.*, 178 *N.J.* 460, 466, 842 *A.*2d 125 (2004). The No Fault Act ushered in "a system of first-party self-insurance" that provided an automobile accident victim prompt "payment of out-of-pocket medical expenses" without regard to fault. *Caviglia, supra,* 178 *N.J.* at 466, 842 *A.*2d 125. One of the goals of the Act was to eliminate litigation over non-serious injuries. *See Roig v. Kelsey,* 135 *N.J.* 500, 511, 641 *A.*2d 248 (1994). The original No Fault Act "precluded an ... insured motorist or passenger from suing a[ ] ... tortfeasor for economic or noneconomic damages[,]" unless she suffered permanent injuries or her treatment costs exceeded $200—the "monetary threshold." *Caviglia, supra,* 178 *N.J.* at 467, 842 *A.*2d 125; *see also Oswin, supra,* 129 *N.J.* at 295–96, 609 *A.*2d 415 (citing *L.* 1972, c. 70, § 8). The No Fault Act restricted the insured victim's unlimited right to sue in exchange for the benefit of "lower premiums and prompt payment of medical expenses." *Caviglia, supra,* 178 *N.J.* at 467, 842 *A.*2d 125 (citing *Roig, supra,* 135 *N.J.* at 511–12, 641 *A.*2d 248).

However, the Act did not deliver on the promise of containing the spiraling cost of automobile insurance. *Id.* at 468, 842 *A.*2d 125; *Oswin, supra,* 129 *N.J.* at 296, 609 *A.*2d 415. Over the decades, the Legislature repeatedly amended the Act, seeking to achieve the elusive balance of making premiums affordable while allowing injured automobile accident victims to pursue compensation for their injuries. *See Caviglia, supra,* 178 *N.J.* at 467–68,

842 *A.*2d 125. In 1984, the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act introduced "tort options," allowing insureds to choose either the old $200 threshold or a new $1,500 monetary threshold that would have to be satisfied before seeking pain and suffering damages for non-permanent injuries. *Oswin, supra,* 129 *N.J.* at 296, 609 *A.*2d 415 (citing *L.* 1983, *c.* 362, § 14); *see also Caviglia, supra,* 178 *N.J.* at 468 n. 3, 842 *A.*2d 125. Under this legislation, the policyholder who selected the $1,500 threshold would benefit from substantially lower premiums but could not sue for pain and suffering damages unless her medical expenses exceeded that amount. *Caviglia, supra,* 178 *N.J.* at 468 n. 3, 842 *A.*2d 125.

The 1988 amendment to *N.J.S.A.* 39:6A–8(a) removed the monetary threshold template and replaced it with one that allowed automobile insurance policyholders to choose between two new options: paying higher premiums for the right to an unrestricted recovery of noneconomic damages or paying lower premiums for a limited right of recovery for such damages. *L.* 1988, *c.* 119, § 6; *see also Caviglia, supra,* 178 *N.J.* at 470, 842 *A.*2d 125; *Oswin, supra,* 129 *N.J.* at 297, 609 *A.*2d 415. Under this second option, known as the "verbal threshold," the insured victim could sue for noneconomic damages only if her injuries fit into one of nine statutory categories. *Oswin, supra,* 129 *N.J.* at 297, 609 *A.*2d 415. The phrase "verbal threshold" came into vogue because the plaintiff had to prove that an injury or condition satisfied the statutory *words. Id.* at 296, 609 *A.*2d 415.

A plaintiff vaulted the verbal threshold if she demonstrated that she suffered an injury resulting in:

[1] death; [2] dismemberment; [3] significant disfigurement; [4] a fracture; [5] loss of a fetus; [6] permanent loss of use of a body organ, member, function or system; [7] permanent consequential limitation of use of a body organ or member; [8] significant limitation of use of a body function or system; or [9] a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment . . . .

[*L.* 1988, *c.* 119, § 6; *Oswin, supra,* 129 *N.J.* at 315, 609 *A.*2d 415.]

In *Oswin, supra,* this Court held that the verbal threshold required a plaintiff to prove not only that her injury fell within one of the nine statutory categories, but also that " 'the injury had a serious impact on the plaintiff and her life.' " 129 *N.J.* at 318, 609 *A.*2d 415 (quoting *Oswin v. Shaw,* 250 *N.J.Super.* 461, 470, 595 *A.*2d 522 (App.Div.1991), *aff'd, Oswin, supra,* 129 *N.J.* at 294, 318, 609 *A.*2d 415).[7] After *Oswin, supra,* a New Jersey plaintiff had to prove not only that the injury fit within one of the nine threshold categories, but also that it caused a serious life impact.

In *Oswin*'s wake, appellate courts grappled with applying the serious life impact test to the myriad factual scenarios arising in automobile accident cases. One appellate panel, surveying the reported opinions following *Oswin, supra,* concluded that it was "difficult to find an analytical thread unifying subsequent judicial treatment of what constitutes a 'serious impact' upon a plaintiff's life." *James, supra,* 354 *N.J.Super.* at 591, 808 *A.*2d 873 (citing cases).

In the ten years after the passage of the 1988 threshold, the cost of medical expense benefits substantially increased and insur-

---

[7] The *Oswin* Court noted that the serious life impact "requirement *seems* to comport with the New York cases." 129 *N.J.* at 318, 609 *A.*2d 415 (emphasis added). New York's comparable no fault statute contained the identical nine verbal threshold categories. *Id.* at 303, 315, 609 *A.*2d 415. The New York verbal threshold statute, however, specifically defined "serious injury" as an injury described in one of its nine statutory categories. *Id.* at 303, 609 *A.*2d 415. Our review of current New York case law indicates that in New York a plaintiff need only prove that the injury fits into one of its nine statutorily defined categories to be deemed serious and to vault the threshold. *See, e.g., Pommells v. Perez,* 4 *N.Y.*3d 566, 571 n. 1, 797 *N.Y.S.*2d 380, 382 n. 1, 830 *N.E.*2d 278, 280 n. 1 (N.Y.2005) (explaining that "[o]nly in the event of 'serious injury' as defined in the statute, can a person initiate suit against the car owner or driver for damages caused by the accident" and that *N.Y. Ins. Law* § 5102(d) defines "serious injury" as one of nine statutorily defined categories); *Toure v. Avis Rent A Car Sys., Inc.,* 98 *N.Y.*2d 345, 746 *N.Y.S.*2d 865, 774 *N.E.*2d 1197, 1200–02 (2002). From our historical vantage point, we cannot find in New York case law since *Oswin, supra,* a requirement that, in addition to satisfying one of the nine statutorily defined threshold categories, the plaintiff must prove that the injury had a serious life impact.

ance premiums soared. *N.J.S.A.* 39:6A–1.1(b). In responding to the need to control the spiraling costs to both consumers and insurance companies, the Legislature enacted "the 'Automobile Insurance Cost Reduction Act'" in 1998. *N.J.S.A.* 39:6A–1.1(a). AICRA was a comprehensive legislative package with a multi-pronged approach aimed at achieving the goals of containing costs, rooting out fraud within the system, and ensuring a fair rate of return for insurers. *N.J.S.A.* 39:6A–1.1(b). One part of that package was a new lawsuit threshold.

AICRA reconfigured the verbal threshold's nine categories into six in the limitation on lawsuit threshold. *N.J.S.A.* 39:6A–8(a). The limitation on lawsuit threshold bars a recovery for pain and suffering unless the plaintiff suffers an injury that results in 1) "death;" 2) "dismemberment;" 3) "significant disfigurement or significant scarring;" 4) "displaced fractures;" 5) "loss of a fetus;" or 6) "a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." *Ibid.* The statute explains that "[a]n injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." *Ibid.*

Although the categories of death, dismemberment, and loss of a fetus remained unchanged from the 1988 threshold, AICRA recast the other categories of injuries. Significant scarring was added to the significant disfigurement category. While any fracture vaulted the 1988 threshold, AICRA limited that category to displaced fractures, a more serious type of fracture involving a complete separation of a broken bone. The final four categories of the old verbal threshold were deleted and replaced in AICRA with the permanent injury category.

Moreover, the Legislature imposed additional requirements for a plaintiff to vault the new threshold not contained in the 1988 threshold. Under AICRA, within sixty days following the filing of an answer to the complaint, the plaintiff must provide the defendant with a certification from an appropriately licensed physician

stating that she suffered an injury defined in one of the six statutory categories. *N.J.S.A.* 39:6A–8(a). The physician who issues the certification must base his findings on "objective clinical evidence" and make his statements "under the penalty of perjury." *Ibid.* To the extent that objective evidence depends on medical and diagnostic testing, the procedures must be performed in accordance with accepted protocols pursuant to *N.J.S.A.* 39:6A–4(a) and *N.J.S.A.* 39:6A–4.7, and "may not be experimental in nature or dependent entirely upon subjective patient response." *N.J.S.A.* 39:6A–8(a). A physician who purposely or knowingly files a false or misleading certification commits a fourth-degree crime with a presumption of incarceration and faces forfeiture of his medical license. *Ibid.* Those rigorous standards, explicitly spelled out in AICRA, were intended to ensure that only honest and reliable medical evidence and testing procedures would be introduced to prove that an injury meets the threshold. Finally, a plaintiff who fails to file a timely certification is subject to an array of sanctions that include reimbursing the defendant with reasonable attorney's expenses or dismissal of the complaint. *Casinelli v. Manglapus,* 181 *N.J.* 354, 365, 858 *A.*2d 1113 (2004).

The complete overhaul of the verbal threshold was only one piece of a larger reform plan to bring down costs within the automobile tort system. AICRA created the Office of the Insurance Fraud Prosecutor, *N.J.S.A.* 17:33A–16, a new dispute resolution procedure concerning personal injury protection (PIP) benefits, *N.J.S.A.* 39:6A–5.1, and a new "basic automobile insurance policy" that limited medical expense reimbursements under PIP coverage, *N.J.S.A.* 39:6A–3.1.[8] AICRA amended the definition of medical expenses to cover only "reasonable and necessary expenses for treatment or services. . . ." *N.J.S.A.* 39:6A–2(e).

After the passage of AICRA, the Appellate Division applied *Oswin*'s serious life impact test to the limitation on lawsuit thresh-

---

[8] The basic policy under *N.J.S.A.* 39:6A–3.1 provides less PIP coverage than in a standard policy, *N.J.S.A.* 39:6A–4.

old. *James, supra,* 354 *N.J.Super.* at 596, 808 *A.*2d 873; *Rios, supra,* 354 *N.J.Super.* at 580, 808 *A.*2d 868. Our courts have had to make exceedingly fine distinctions in determining what constitutes a serious life impact since the inception of the *Oswin* standard to the present day. *See, e.g., Martin v. Chhabra,* 374 *N.J.Super.* 387, 394, 864 *A.*2d 1155 (App.Div.2005); *Bennett v. Lugo,* 368 *N.J.Super.* 466, 471, 477, 847 *A.*2d 14 (App.Div.), *certif. denied,* 180 *N.J.* 457, 852 *A.*2d 193 (2004); *Tierra v. Salazar,* 356 *N.J.Super.* 586, 587–88, 813 *A.*2d 1208 (App.Div.2003). We cannot take issue with the observation by the Appellate Division in *James, supra,* that it has been difficult to discern a consistent pattern to the application of the *Oswin* test. *Compare James, supra,* 354 *N.J.Super.* at 596, 808 *A.*2d 873 (finding no serious life impact when plaintiff had "difficulty holding on to her two-year old child, going up and down a lot of stairs, sitting down and standing up quickly, . . . vacuuming and sweeping and bathing her daughter"), *Montemayor v. Signorelli,* 339 *N.J.Super.* 482, 485–87, 772 *A.*2d 940 (App.Div.2001) (finding no serious life impact when plaintiff missed days from nursing job, had difficulty " 'lifting and bending . . . at work and at home,' " and had to give up biweekly bowling), *Sherry v. Buonansonti,* 287 *N.J.Super.* 518, 521–22, 671 *A.*2d 606 (App.Div.) (finding no serious life impact when plaintiff's recreational activities, *i.e.,* swimming and dancing, were limited, but he was able to do housework and return to work), *certif. denied,* 144 *N.J.* 588, 677 *A.*2d 760 (1996), *and Chalef v. Ryerson,* 277 *N.J.Super.* 22, 27, 38, 648 *A.*2d 1139 (App.Div.1994) (finding no serious life impact when plaintiff missed two months of work, "suffer[ed] pain during periods of prolonged sitting or standing," and could not ride horses or ski), *with Natale v. Kisling,* 336 *N.J.Super.* 198, 204, 764 *A.*2d 463 (App.Div.2001) (finding evidence of serious life impact when plaintiff had "substantial loss of sex, loss of overtime, and inability to perform housework"), *Moreno v. Greenfield,* 272 *N.J.Super.* 456, 465–66, 640 *A.*2d 335 (App.Div. 1994) (finding evidence of serious life impact when plaintiff had difficulty bending, doing daily chores, sleeping on her stomach, and was unable to go dancing as often as she used to, or go to gym

regularly), *Arencibia v. Rosas*, 270 *N.J.Super.* 339, 348–49, 637 A.2d 205 (App.Div.1994) (finding evidence of serious life impact when plaintiff had difficulty working because she could not exercise, lift heavy objects, or sit for long periods without pain), *and Cineas v. Mammone*, 270 *N.J.Super.* 200, 211–12, 636 A.2d 1071 (App.Div.1994) (finding evidence of serious life impact when plaintiff could not perform household chores, paint or repair his home, could no longer work overtime, and could not have "sexual relations . . . as frequently as before the accident").

## III.

The issue before us is whether the Legislature intended the *Oswin* serious life impact test to apply to AICRA's limitation on lawsuit threshold. Plaintiff contends that the intent of the Legislature is found in the plain language of the threshold statute, *N.J.S.A.* 39:6A–8(a), and the absence of a serious life impact standard in that statute. Plaintiff's strongest argument may lie in a simple logical deduction. The Legislature knew of the *Oswin* standard; the AICRA threshold does not contain that standard; therefore, the Legislature must have intended to exclude the *Oswin* standard. Plaintiff bolsters that argument by highlighting that *Oswin, supra*, construed the 1988 verbal threshold, a statute significantly different from AICRA's limitation on lawsuit threshold. She points out that the limitation on lawsuit threshold was but one part of a comprehensive statutory scheme aimed at lowering insurance rates. She urges this Court not to superimpose a judicial standard, unintended by the Legislature, onto that scheme.

Defendants submit that the Legislature necessarily intended this Court to carry over the serious life impact test from the verbal threshold to the current lawsuit threshold. Defendants forcefully argue that the singular purpose of AICRA was to reduce insurance rates. By defendants' logic, discarding *Oswin*'s serious life impact standard would guarantee more successful pain and suffering claims, which in turn would lead to increases in

insurance premiums, a result the Legislature could not have wanted. Plaintiff and defendants array the extrinsic evidence to their respective advantages, reaching diametrically opposed conclusions. With those arguments in mind, we proceed to survey the limitation on lawsuit threshold and its origins in search of legislative intent.

In determining whether *Oswin*'s serious life impact standard survived the passage of AICRA, we must look to the Legislature's intent in fashioning AICRA's limitation on lawsuit threshold. The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language. *Frugis v. Bracigliano*, 177 *N.J.* 250, 280, 827 *A.*2d 1040 (2003). We ascribe to the statutory words their ordinary meaning and significance, *Lane v. Holderman*, 23 *N.J.* 304, 313, 129 *A.*2d 8 (1957), and read them in context with related provisions so as to give sense to the legislation as a whole, *Chasin v. Montclair State Univ.*, 159 *N.J.* 418, 426–27, 732 *A.*2d 457 (1999). It is not the function of this Court to "rewrite a plainly-written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language." *O'Connell v. State*, 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002). We cannot "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment," *Craster v. Bd. of Comm'rs of Newark*, 9 *N.J.* 225, 230, 87 *A.*2d 721 (1952), or "engage in conjecture or surmise which will circumvent the plain meaning of the act," *In re Closing of Jamesburg High School*, 83 *N.J.* 540, 548, 416 *A.*2d 896 (1980). "Our duty is to construe and apply the statute as enacted." *Ibid.*

A court should not "resort to extrinsic interpretative aids" when "the statutory language is clear and unambiguous, and susceptible to only one interpretation ...." *Lozano v. Frank DeLuca Const.*, 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004) (internal quotations omitted). On the other hand, if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, "including legis-

lative history, committee reports, and contemporaneous construction." *Cherry Hill Manor Assocs. v. Faugno,* 182 *N.J.* 64, 75, 861 *A.*2d 123 (2004) (internal quotations omitted). We may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language. *See Hubbard ex rel. Hubbard v. Reed,* 168 *N.J.* 387, 392–93, 774 *A.*2d 495 (2001).

Our analysis, therefore, begins with the plain language of the statute. *Miah v. Ahmed,* 179 *N.J.* 511, 520, 846 *A.*2d 1244 (2004). The language of the limitation on lawsuit threshold requires a plaintiff to prove that the defendant caused "a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." *N.J.S.A.* 39:6A–8(a). In this case, plaintiff has alleged a permanent injury. The statute provides that "[a]n injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." *Ibid.* The statutory language places no burden on plaintiff other than to prove that the injury meets one of the threshold categories.

The Legislature did not include a serious life impact requirement in the text of *N.J.S.A.* 39:6A–8(a) as an added condition to vaulting the lawsuit threshold. Ordinarily, we are enjoined from presuming that the Legislature intended a result different from the wording of the statute or from adding a qualification that has been omitted from the statute. We typically would not presume that after identifying precisely the types of injuries that must be proven to vault the threshold, the Legislature left for the judiciary to impose an additional hurdle for the plaintiff to clear for an actionable claim. In light of the seemingly clear and unambiguous language of *N.J.S.A.* 39:6A–8(a), we could bring our analysis to a conclusion. We recognize, however, that we cannot ignore the unique historical background of AICRA and

the prior judicial construction of a predecessor statute—the 1988 verbal threshold.

By adopting the reasoning of *James, supra,* and *Rios, supra,* the Appellate Division in this case found, despite the plain language of the statute, a legislative intent to transpose *Oswin's* serious life impact standard from the verbal threshold onto AICRA. The Appellate Division also found that dispensing with the serious life impact standard is inconsistent with AICRA's legislative declarations and findings, its legislative history, and its cost-cutting objectives.[9] We, therefore, will look to the available extrinsic aids to see whether they point to an interpretation different from the clear language of the statute. Specifically, we will examine relevant canons of statutory construction, AICRA's preamble, the Sponsors' Statement to the bill, the Governor's conditional veto of AICRA, and the policy considerations undergirding the legislation.

## IV.

We first observe that "the Legislature is presumed to be aware of judicial construction of its enactments," *N.J. Democratic Party, Inc. v. Samson,* 175 *N.J.* 178, 195 n. 6, 814 *A.*2d 1028 (2002) (citing *Brewer v. Porch,* 53 *N.J.* 167, 174, 249 *A.*2d 388 (1969)), and that "a change of language in a statute ordinarily implies a purposeful alteration in [the] substance of the law," *Nagy v. Ford Motor Co.,* 6 *N.J.* 341, 348, 78 *A.*2d 709 (1951) (internal quotations omitted). By those canons of statutory construction, we start with the presumption that the Legislature was aware of the *Oswin* decision and that it consciously omitted the serious life impact standard as a condition for recovery of pain and suffering damages.

We hardly need state that the Legislature knows how to incorporate into a new statute a standard articulated in a prior opinion

---

[9] *See James, supra,* 354 *N.J.Super.* at 594–96, 808 *A.*2d 873; *Rios, supra,* 354 *N.J.Super.* at 580, 584, 808 *A.*2d 868.

of this Court. *See, e.g., In re Guardianship of K.H.O.*, 161 *N.J.* 337, 343, 736 *A.*2d 1246 (1999) (noting that Legislature codified "best interests of the child" standard from Court's holding in *N.J. Div. of Youth & Family Servs. v. A.W.*, 103 *N.J.* 591, 512 *A.*2d 438 (1986), into *N.J.S.A.* 30:4C–15.1(a)); *Civalier v. Estate of Trancucci*, 138 *N.J.* 52, 60, 648 *A.*2d 705 (1994) (noting that Legislature codified Court's holding in *Hoy v. Capelli*, 48 *N.J.* 81, 222 *A.*2d 649 (1966), when it adopted *N.J.S.A.* 59:4–5 and codified Court's holding in *Bergen v. Koppenal*, 52 *N.J.* 478, 246 *A.*2d 442 (1968), when it adopted *N.J.S.A.* 59:4–4); *Debell v. Bd. of Trs., Pub. Employees' Ret. Sys.*, 357 *N.J.Super.* 461, 463, 815 *A.*2d 997 (App.Div.2003) (noting that Legislature codified Court's eleven-factor test for determining when civil servant forfeits pension created in *Uricoli v. Bd. of Trs., Police & Firemen's Ret. Sys.*, 91 *N.J.* 62, 449 *A.*2d 1267 (1982) into *N.J.S.A.* 43:1–3).

In enacting AICRA, the Legislature adopted *Oswin*'s interpretation of the 1988 threshold requiring a plaintiff to prove a verbal threshold injury by objective credible evidence. *Compare Oswin, supra*, 129 *N.J.* at 314, 609 *A.*2d 415 (ruling that "plaintiff must show a material dispute of fact by *credible, objective medical evidence*" (emphasis added)), *with N.J.S.A.* 39:6A–8(a) (requiring that physician's certification of threshold-vaulting injury "shall be based on and refer to *objective clinical evidence*" (emphasis added)). The Legislature's explicit incorporation of one of *Oswin*'s holdings (the objective medical evidence standard) into AICRA strongly implies that it consciously chose not to incorporate another of *Oswin*'s holdings (the serious life impact standard). *See Brodsky v. Grinnell Haulers, Inc.*, 181 *N.J.* 102, 112, 853 *A.*2d 940 (2004) ("The canon of statutory construction, *expressio unius est exclusio alterius*—expression of one thing suggests the exclusion of another left unmentioned—sheds some light on the interpretative analysis."); *Moses v. Moses*, 140 *N.J.Eq.* 575, 583, 53 *A.*2d 805 (E. & A.1947) ("An affirmative expression ordinarily implies a negation of any other.").

V.

A.

To overcome the presumption that the Legislature acted deliberately by not incorporating *Oswin*'s serious life impact standard into AICRA, defendants must demonstrate through extrinsic aids that the Legislature expected that this Court would interpret the wholly new limitation on lawsuit threshold in the same manner as the discarded 1988 verbal threshold.

Plaintiff and defendants argue that the Legislature's findings and declarations set forth in *N.J.S.A.* 39:6A–1.1(b) (AICRA's preamble) support their interpretations of the limitation on lawsuit threshold. Those findings and declarations, in relevant part, state:

> Whereas, The principle underlying the philosophical basis of the no-fault system is that of a trade-off of one benefit for another; in this case, providing medical benefits in return for *a limitation on the right to sue for non-serious injuries;* and

> Whereas, While the Legislature believes that it is good public policy to provide medical benefits on a first party basis, without regard to fault, to persons injured in automobile accidents, it recognizes that in order to keep premium costs down, the cost of the benefit must be offset by a reduction in the cost of other coverages, most notably *a restriction on the right of persons who have non-permanent or non-serious injuries to sue for pain and suffering;* and

> . . . .

> Whereas, To meet these goals, this legislation . . . provides for a revised lawsuit threshold for suits for pain and suffering which will *eliminate suits for injuries which are not serious or permanent,* including those for soft tissue injuries . . . . [*N.J.S.A.* 39:6A–1.1(b) (emphasis added).]

A court may turn to a statute's preamble as an aid in determining legislative intent. *Bass v. Allen Home Improvement Co.,* 8 *N.J.* 219, 225, 84 *A.2d* 720 (1951). The preamble, however, should be read in harmony with the statute that it introduces, whenever possible. *See In re Passaic County Utils. Auth.,* 164 *N.J.* 270, 300, 753 *A.2d* 661 (2000) (" '[E]ach part or section [of the statute] should be construed in connection with every other part or section so as to produce a harmonious whole' . . . ." (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.05 at 103 (5th ed. 1992))); *State v. Green,* 62 *N.J.* 547, 554, 303 *A.2d* 312

(1973) ("It is basic in the construction of legislation that every effort should be made to harmonize the law relating to the same subject matter."). To the extent that the preamble is at variance with the clear and unambiguous language of the statute, the preamble must give way. *State v. Mundet Cork Corp.*, 8 *N.J.* 359, 366, 86 *A.*2d 1, *cert. denied*, 344 *U.S.* 819, 73 *S.Ct.* 14, 97 *L.Ed.* 637 (1952).

Defendants claim that the preamble demonstrates that a plaintiff must prove that a threshold-vaulting injury is both serious and permanent, and, therefore, *Oswin*'s serious life impact requirement survived the amendments to *N.J.S.A.* 39:6A–8(a). They reason that the preamble's language—that the lawsuit threshold is "a limitation on the right to sue for non-serious injuries"—is a clear signal that the Legislature intended a plaintiff to meet the *Oswin* standard in addition to proving that the injury fell within one of the threshold categories. Conversely, plaintiff contends that all the statutorily defined threshold injuries are serious injuries, but not all are permanent, which is why the preamble speaks of those injuries in the disjunctive.

The legislative findings and declarations give an overview of the limitation on lawsuit threshold in *N.J.S.A.* 39:6A–8(a), and we read the two provisions, as we must, in harmony with each other. We find that the preamble's language, which speaks in the disjunctive of non-serious or non-permanent injuries, is merely descriptive of the six statutorily defined threshold categories of *N.J.S.A.* 39:6A–8(a). Five of those categories encompass what would commonly be considered permanent injuries: injuries causing "death;" "dismemberment;" "significant disfigurement or significant scarring;" "loss of a fetus;" and "a permanent injury to a body part or organ within a reasonable degree of medical probability, other than scarring or disfigurement." *N.J.S.A.* 39:6A–8(a). Only a displaced fracture could possibly qualify as a non-permanent injury, provided the fracture could heal well enough for the bone to function normally. In putting a displaced fracture in a separate category, the Legislature, in effect, classified such an injury as

serious. We cannot find a suggestion in the statute or its history that the Legislature did not regard the threshold injuries to be serious injuries. The logical conclusion is that the Legislature created those threshold categories for the purpose of denominating six classes of serious injuries. Indeed, Governor Whitman, who signed AICRA into law, viewed the limitation on lawsuit threshold as replacing the "temporary, nonserious injuries" that qualified under the verbal threshold. *See* Part V.C., *infra* at 503–04, 874 *A.*2d at 1055–56.

At best, defendants can argue that there appears to be ambiguity between the preamble and the statute. We will not labor, however, to find a conflict between the Legislature's findings and declarations in *N.J.S.A.* 39:6A–1.1(b) and the text of *N.J.S.A.* 39:6A–8(a). The threshold injuries defined in *N.J.S.A.* 39:6A–8(a) are not all permanent injuries, *i.e.,* displaced fractures. The Legislature, however, must have considered an injury necessary to vault the threshold to be a serious injury. We cannot conclude that the Legislature excluded the *Oswin* serious life impact standard from the limitation on lawsuit threshold with the intention of inserting it through an oblique reference in the preamble.

## B.

Defendants also submit that the Sponsors' Statement to Senate Bill No. 3 (later enacted as AICRA) supports their position that the Legislature intended the limitation on lawsuit threshold to be interpreted consistent with the *Oswin* serious life impact test.[10] We disagree and find that the Sponsors' Statement sheds no light on this issue. *Cf. Lamie v. United States Trustee,* 540 *U.S.* 526, 539, 124 *S.Ct.* 1023, 1033, 157 *L.Ed.*2d 1024 (2004) ("Though we find it unnecessary to rely on the legislative history behind the [statute being interpreted], we find it instructive that the history creates more confusion than clarity about the [legislative] intent.").

---

[10] Senators Donald T. DiFrancesco and John H. Adler sponsored the bill. There also were a number of co-sponsors.

██ The statements of a bill's sponsors can be a helpful tool in understanding legislative intent; nevertheless, such extrinsic evidence has limitations. *Deaney v. Linen Thread Co.*, 19 *N.J.* 578, 584–85, 118 *A.*2d 28 (1955). Although statements of a bill's sponsor may give insight into legislative purpose, such statements also may represent the viewpoint of just one person, or a small group of lawmakers. A sponsor's statement may also be "contradictory, ambiguous or otherwise without substantial probative value in determining legislative meaning." *Id.* at 585, 118 *A.*2d 28. Therefore, as with all extrinsic aids enlisted to divine legislative intent, a court must proceed with caution and exercise "considered judgment" in determining the weight that should be accorded to a sponsor's statement. *Ibid.*

Defendants concentrate on the last sentence of a paragraph in the Sponsors' Statement that addresses the lawsuit threshold. That sentence reads: "No provision in this bill is intended to repeal otherwise applicable case law." *Sponsors' Statement to Senate Bill No. 3*, at 59 (Apr. 2, 1998) (*L.* 1998, *c.* 21), *available at* http://www.njleg.state.nj.us/9899/Bills/s0500/3_i2.pdf.[11] Plaintiff and defendants hotly dispute the significance of that sentence. Defendants reason that the Legislature intended this Court's judicial construction of the 1988 verbal threshold in *Oswin, supra,* to apply to the limitation on lawsuit threshold in AICRA. Conversely, plaintiff argues that *Oswin's* serious life impact standard is not relevant to the completely overhauled threshold in AICRA.

The one sentence quoted above from the Sponsors' Statement must be viewed as part of a larger paragraph discussing the amendments to the lawsuit threshold:

---

[11] This section of the Sponsors' Statement to the Senate version of AICRA relating to the verbal threshold is identical to the Sponsors' Statement to the General Assembly version of the bill. *Compare Sponsors' Statement to Senate Bill No. 3, supra,* at 59, *with Sponsors' Statement to Assembly Bill No. 1970,* at 66 (Apr. 16, 1998), *available at* http://www.njleg.state.nj.us/9899/Bills/a2000/1970_i1.pdf.

> *[I]n order to further limit the number of lawsuits filed and thereby reduce premiums for bodily injury coverage, the bill completely eliminates the existing verbal threshold and substitutes a new verbal threshold which is intended to eliminate some of the lawsuits for minor injuries, including soft tissue injuries, which are neither serious nor permanent.* The new threshold would permit suits in the event of death, dismemberment, significant disfigurement or significant scarring, displaced fractures, loss of a fetus, or permanent injuries other than significant disfigurement or significant scarring if the injury is permanent to the extent that the body part or organ system has not healed to function normally and will not heal to function normally with further medical treatment. Certification by a licensed treating physician that the body part or organ system has not healed to function normally and will not heal to function normally would be necessary before suit was filed. The certification would have to be based on objective clinical evidence which would include medical testing. Fraudulent certification by a physician could be a crime of the fourth degree. *No provision in this bill is intended to repeal otherwise applicable case law.*
>
> [*Ibid.* (emphasis added).]

The paragraph as a whole makes it clear that the sponsors intended to replace the verbal threshold as it had existed at the time of *Oswin, supra,* with a completely new threshold.

The textual differences between New Jersey's old and new threshold statutes render questionable any supposition that the Legislature intended *Oswin's* serious life impact standard to be "otherwise applicable case law." Four of the nine verbal threshold categories in the 1988 threshold were eliminated in AICRA and replaced by just one category addressing permanent injuries. One of the eliminated categories of the verbal threshold allowed a lawsuit for pain and suffering damages if the plaintiff proved "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment." *L.* 1988, *c.* 119, § 6. That more subjective standard, now gone, arguably was a significant spur for the conception of the serious life impact standard. There are other notable distinctions between the two statutes. Unlike the 1988 threshold, which allowed general fractures automatically to vault the threshold, AICRA allowed only *displaced* fractures to do so.

AICRA also added *significant* scarring as a specific ground for seeking pain and suffering damages. All in all, AICRA's threshold categories have fewer subjective characteristics than the 1988 threshold, with AICRA specifically requiring a threshold-vaulting injury to be proven by "objective clinical evidence." *N.J.S.A.* 39:6A–8(a).

As mentioned earlier, the 1988 verbal threshold was patterned after New York law. The Joint Committee on Automobile Insurance Reform that drafted the bill that became AICRA acknowledged that the source of the limitation on lawsuit threshold was Florida law. *Deliberations with regard to automobile insurance reform: Committee Meeting of the Joint Committee on Automobile Insurance Reform,* Leg. 208, at 1–2 (N.J. March 30, 1998) (*L.* 1998, *c.* 21), *available at* http://www.njleg.state.nj.us/legislative-pub/Pubhear/033098lb.PDF. At the Joint Committee's meeting on March 30, 1998, in a colloquy between Assembly Speaker Jack Collins and Senator Richard J. Codey, the two legislators recognized that the proposed limitation on lawsuit threshold was "essentially" the comparable Florida law, except that New Jersey's version had "teeth behind it," *i.e.,* criminal penalties.[12] *Ibid.*

The Florida threshold states that a plaintiff can recover pain and suffering damages provided:

the injury or disease consists in whole or in part of:

(a) Significant and permanent loss of an important bodily function.

(b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.

(c) Significant and permanent scarring or disfigurement.

(d) Death.

[*Fla. Stat. Ann.* § 627.737(2).]

Category (b) of the Florida threshold is identical to AICRA's category six threshold. In other respects, the two statutes are

---

[12] The "teeth" referred to the requirement that a physician attest to the plaintiff's injury in a certification under penalty of perjury and to the criminal penalty attaching to the filing of a false certification. *See N.J.S.A.* 39:6A–8(a).

similar, except that the Florida threshold has only four categories with no separate category for loss of a fetus or displaced fractures.

In *Oswin, supra*, the Court's rationale for incorporating the serious life impact test into the New Jersey no fault insurance law was due in part to a comparison to New York's lawsuit threshold. 129 *N.J.* at 318, 609 *A.*2d 415. In looking to Florida's threshold on which AICRA is modeled, we note that that threshold has not been construed by the Florida courts to require a plaintiff to prove a serious life impact in addition to one of the statutorily defined threshold categories. *See, e.g., Chapman v. Dillon*, 415 *So.*2d 12, 16, 18 (Fla.1982). Although we do not find the following canon of construction controlling in this case, we note that " '[a] legislative enactment patterned after a statute of another state is ordinarily adopted with the prior constructions placed on it by the highest court of the parent jurisdiction.' " *Oswin, supra*, 129 *N.J.* at 309, 609 *A.*2d 415 (quoting *Van Horn v. William Blanchard Co.*, 88 *N.J.* 91, 97, 438 *A.*2d 552 (1981)).

The Sponsors' Statement is a useful interpretative aid only if it assists in understanding the Legislature's intent. Here, at best, the contested sentence is ambiguous because of the difficulty in determining what case law remains relevant to a significantly altered statute. On the other hand, AICRA did take into account that in breaking new ground, old law would have to give way. Speaking to that particular issue, AICRA provided that "[a]ll laws or parts of laws which are inconsistent with the provisions of this act are repealed and superseded to the extent of such inconsistency." *N.J.S.A.* 39:6A–17. We need not decide whether the *Oswin* serious life impact standard is in conflict with AICRA. We cannot, however, discern the Legislature's intent from the Sponsors' Statement or conclude that the Legislature intended to adopt the *Oswin* standard through statutory silence.

## C.

Defendants also point to Governor Christie Todd Whitman's conditional veto of Senate Bill No. 3 as additional evidence sup-

porting their position that the serious life impact standard applies to AICRA. In contrast, *amicus* Association of Trial Lawyers of America–New Jersey cites the same conditional veto to buttress the opposite conclusion.

▆▆ A Governor's conditional veto of a bill may be considered in determining legislative intent, and may be "strong evidence" of that intent when the veto directly affects that part of the legislation to be construed. *Oswin, supra,* 129 *N.J.* at 308, 609 *A.*2d 415 (internal quotations omitted). In this case, Governor Whitman exercised her power to conditionally veto S–3 pursuant to Article V, Section 1, Paragraph 14 of the New Jersey Constitution. *Governor's Recommendations for Reconsideration Statement to Senate Bill No. 3,* at 2 (Apr. 27, 1998) (*L.* 1998, c. 21), *available at* http://www.njstatelib.org/NJLH/LH9899/PDFDOCS/9899/S3_ 1.PDF.

Governor Whitman conditionally vetoed the initial AICRA bill because she wanted the statute to "provide greater consumer choices, mandate that any changes to territorial caps be revenue neutral, establish set criteria for the delineation of new rating territories, and preserve rate caps for seniors citizens and drivers who select the basic policy." Press Release, Office of the Governor, *Whitman Conditionally Vetoes S–3,* at 1 (Apr. 27, 1998) (*L.* 1998, c. 21), *available at* http://www.njstatelib.org/NJLH/LH9899/PDFDOCS/9899/S3_2.PDF. None of Governor Whitman's recommended changes to the bill that led to the conditional veto related to the new limitation on lawsuit threshold.

Nevertheless, given "the certainty of judicial interpretation" of Senate Bill No. 3, the Governor analyzed the bill's principal provisions, including the "[r]evised [l]awsuit [t]hreshold." *Governor's Recommendations for Reconsideration Statement to Senate Bill No. 3, supra,* at 2–4. The Governor concluded that "[t]he 1988 threshold ha[d] not worked" because it allowed recovery for "nonpermanent" injuries, such as injuries that heal and nonserious fractures, and because it relied on "nebulous" substantive standards. *Id.* at 3. The Governor viewed the new threshold law

as a stronger version of the comparable Florida law, requiring that proof of injuries be based on "objective clinical evidence" and that the injuries' "permanency must be attested by the treating physician under penalty of perjury . . . ." *Id.* at 3–4. The Governor noted that

Senate Bill No. 3 replaces the existing lawsuit threshold, under which temporary, nonserious injuries qualify, with a requirement that fractures be displaced and that other injuries be serious enough never to heal sufficiently to regain normal function. In other words, the injury must be to a "body part or organ" (as opposed to "tissue," which was consciously omitted from the definition in negotiations) and must be permanent [i]n order for the injured party to have standing to sue. [*Id.* at 3.]

The Governor's commentary suggests that she considered both permanent injuries and displaced fractures to be serious injuries under the new, improved threshold. The Governor referred to *Oswin, supra,* in her message, but only to make an unrelated point concerning Florida law. *Id.* at 4. Nowhere in her analysis did Governor Whitman express the view that *Oswin*'s serious life impact standard would apply to AICRA. The Governor's awareness of *Oswin, supra,* and her failure to reference the serious life impact test strongly imply that she did not expect that *Oswin*'s extra-statutory standard would apply to AICRA. The Governor's conditional veto does not indicate in any way that the serious life impact standard survived the passage of AICRA.

D.

Finally, we address defendants' argument that the Legislature must have intended to retain the serious life impact standard because one of AICRA's paramount goals was to reduce the cost of automobile insurance. The Appellate Division in *James, supra,* presented that interpretative analysis, stating that "[i]f courts were to permit claims to go forward even in the absence of proof of a serious impact on a plaintiff's life, it would run counter to this legislative purpose" because "the entire thrust behind the passage of AICRA was to reduce the number of litigated claims and, thus, to bring stability to automobile insurance premiums." 354 *N.J.Super.* at 594, 808 *A.*2d 873.

We disagree with that narrow assessment of the limitation on lawsuit threshold in relation to the legislative goals in AICRA. AICRA is a detailed and comprehensive statute that seeks to contain costs in multiple ways: through the prosecution of fraud, introduction of a basic insurance plan, implementation of a dispute resolution procedure, and tightening of the threshold. The new limitation on lawsuit threshold was but one means of stabilizing and reducing costs. The Legislature could have completely eliminated the right to sue for pain and suffering, which would have presumably reduced insurance premiums. But it did not do so. Instead, the Legislature chose to effectuate cost-cutting savings by placing specific restrictions on the right to sue. Those restrictions are set forth in the statutory language of the new threshold. The Legislature did not articulate in its statutory scheme a requirement that injured plaintiffs must prove a serious life impact to meet the threshold.

The *James* court's assessment overlooks the reality that AICRA was a product of lobbying, negotiation, and eventual legislative compromise. The Joint Committee on Automobile Insurance Reform reviewed a number of different possible options for revising the verbal threshold, ranging from eliminating it entirely to enacting a threshold far stricter than the preexisting one. *Deliberations with regard to automobile insurance reform: Committee Meeting of the Joint Committee on Automobile Insurance Reform,* Leg. 208, at 79–113 (N.J. Mar. 26, 1998) (*L.* 1998, *c.* 21), *available at* http://www.njleg.state.nj.us/legislativepub/Pubhear/032698dd.PDF. The Joint Committee chose from among the options and developed a threshold that is comparable to Florida, but unique in its own right. The legislation went through various permutations before it reached its present form.

Based on the thoroughness of the Committee's work on this subject, we cannot presume that in developing a threshold "with teeth" the members did not consider the *Oswin* serious life impact standard. Nor can we conclude that the Legislature established clearly defined statutory categories of injuries to be proven by

objective clinical evidence, and then expected this Court to impose on accident victims a higher burden of proof.

It was the Legislature's duty to decide what degree of cost savings should be achieved through specific restrictions on the right to sue. In enacting the limitation on lawsuit threshold, it crafted a statute that defined when an accident victim could sue for pain and suffering damages. We should not interfere with the policy choices made by the Legislature. It may be true that there would be fewer successful claims if we were to impose a serious life impact standard on top of the statutory requirements. However, if the Legislature intended that accident victims should have a more difficult hurdle in obtaining a recovery, then it must draft a statute that accomplishes that end. We will not write that statute.

## VI.

In conclusion, we hold that the plain language of *N.J.S.A.* 39:6A–8(a) does not contain a serious life impact standard. Nothing in AICRA's preamble, its legislative history, or its policy objectives suggests that the Legislature intended this Court to write in that standard. We will not torture the legislative history in this case to create an ambiguity in an otherwise clear statute. Therefore, we reverse the judgment of the Appellate Division affirming the trial court's entry of summary judgment in favor of defendants, and remand for proceedings consistent with this opinion.

Justice RIVERA–SOTO, concurring in the result.

I concur in the judgment of this Court that the 1998 Automobile Insurance Cost Reduction Act (AICRA), *N.J.S.A.* 39:6A–1 to –35, does not contain the "serious life impact" requirement engrafted on its predecessor statute by *Oswin v. Shaw,* 129 *N.J.* 290, 609 *A.*2d 415 (1992). Although principled arguments can be marshaled to support the proposition that AICRA implicitly incorporates *Oswin's* serious life impact requirement—as the Court does in Part V of its opinion, *ante,* 183 *N.J.* 496–506, 874 *A.*2d at 1050–

57, as the Appellate Division did here, in *James v. Torres*, 354 *N.J.Super.* 586, 808 *A.*2d 873 (App.Div.2002), *certif. denied*, 175 *N.J.* 547, 816 *A.*2d 1049 (2003), and in *Rios v. Szivos*, 354 *N.J.Super.* 578, 808 *A.*2d 868 (App.Div.2002), and with which I would prefer to agree—those arguments do not overcome the plain language of AICRA, language that does not admit of an ambiguity and that does not require that its statutorily enumerated serious injuries for which recovery is available also must satisfy an unstated but previously mandated serious life impact requirement.

In the final analysis, Judge Weissbard, in dissent below, succinctly summarized the core issue when he observed that "[i]f the Legislature failed to effectuate its true intent (whatever that may be), it is for the Legislature, not us, to correct the situation." If the Legislature intended that AICRA include *Oswin's* serious life impact requirement as a predicate to recovery, then the cure is straightforward: it can amend *N.J.S.A.* 39:6A:8 to include that requirement. On the other hand, if the Legislature did not intend to transplant the serious life impact requirement of *Oswin* into AICRA, our decision today implements that legislative mandate. In either event, the issue now lies where it properly belongs: before the Legislature.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—6.

*Opposed*—None.