**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2555-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.K.P.,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**February 14, 2022**

**APPELLATE DIVISION**

Submitted February 1, 2022 – Decided February 14, 2022

Before Judges Fisher, Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 18-12-1242.

Joseph E. Krakora, Public Defender, attorney for appellant (Margaret McLane, Assistant Deputy Public Defender, of counsel; Margaret McLane and John Boyle, J.D., on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the letter brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

N.J.S.A. 2C:24-8(a) imposes criminal liability on those who have "assumed continuing responsibility for the care of a person 60 years of age or older," making it a crime of the third-degree to "abandon[] the elderly person . . . or unreasonably neglect[] to do or fail[] to permit to be done any act necessary for the physical or mental health of the elderly person." In this appeal, we consider – and reject – the State's argument that defendant's alleged assault of her elderly mother constitutes a violation of this statute.

The evidence the State presented at trial revealed that, in January 2017, I.P. (Irene),[1] facing eviction, moved from Florida to the Englewood home of defendant, who is her daughter, and defendant's paramour, F.L. (Fred). According to testimony, Irene and defendant had a "[t]ypical mother and daughter" relationship, ranging from affectionate to tense. On August 5, 2018, defendant and Fred went out to lunch with friends, leaving Irene home alone until around 3:00 p.m. Defendant had consumed alcohol at lunch, continued to drink after getting home and, according to testimony, was slightly intoxicated. While Fred sat in the living room, he heard Irene and defendant arguing in a nearby bedroom. The argument escalated into a "screaming" match and Fred entered the bedroom to "quell the quarreling." On entering, Fred observed Irene

---

[1] We use fictitious names to protect the alleged victim's privacy.

A-2555-19

with her back to a wall shaking a back scratcher at defendant while defendant gripped Irene's hands to avoid being struck. Because the pair "were going back and forth with each other still," Fred used "a little bit of force" to physically pull defendant out of the room. Defendant, however, reentered the room three more times to reengage with Irene; each time, Fred physically removed her. Fred testified he did not observe anything wrong with Irene's face, though he also admitted he was suffering from a cataract and could only see "gray" and generally a "person's form." Defendant remained on the couch with Fred that evening, and Irene remained in the bedroom. Fred did not see that defendant had sustained any injuries.

The next morning, Fred was scheduled to bring Irene to a doctor's appointment. When he saw Irene in the kitchen after she woke up, he was unable to observe her face because she sat facing away from him and "was very quiet." Things were "peaceful" between Irene and defendant but, as the morning wore on, Irene became "obstinate" and refused to shower or get dressed for her appointment. Irene later walked out of the apartment alone. Both defendant and Fred believed Irene was outside waiting for them and, therefore, they did not go look for her.

3

Around noon, a police officer was sent to a nearby residence where an ambulance had been requested. On arriving, the officer observed Irene sitting in the front yard with others standing beside her. Irene appeared "excited," and the officer noted she had bruising on her left arm, right hand, and left cheekbone, and redness and swelling on her forehead.

Irene was taken to the hospital and her injuries were photographed, while defendant was taken to police headquarters to be interviewed. The officer conducting the interview did not observe any visible injuries on defendant other than a small scratch on her right earlobe.

Defendant was charged with one count of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(12), and one count of third-degree neglect of an elderly person, N.J.S.A. 2C:24-8(a). During a two-day trial, Irene testified that defendant caused the bruising to her face and arms by hitting her "[v]ery hard" as Irene attempted to defend herself. Irene stated that the hitting started that morning "right when [they] were getting out of bed," and this prompted her to "sneak[] out" of the house. Despite this fracas, Irene testified she wished she still lived with defendant and that defendant "took very good care" of her, and that generally they had "[v]ery good times" together.

The jury acquitted defendant of aggravated assault but convicted her of the lesser-included offense of simple assault, N.J.S.A. 2C:12-1(a)(1); the jury also convicted defendant of neglect of an elder, N.J.S.A. 2C:24-8(a). Defendant was sentenced to concurrent three-year terms of probation conditioned on serving 364 days in jail. Due to the COVID-19 pandemic, defendant was re-sentenced on July 29, 2020, to time served and a two-year probationary term.

In appealing, defendant argues, among other things, that the State's theory of criminal culpability under N.J.S.A. 2C:24-8(a) was "legally insufficient" because the statute requires "neglect," and the State's theory was not that defendant neglected Irene but that she assaulted her. As the State argued in successfully opposing defendant's motion for a judgment of acquittal that the assault was the neglect: "striking an elderly person by itself by its very nature is neglect." The question presented to us is no different. We are asked to determine whether assaulting an elderly person – of whom the defendant has assumed responsibility – constitutes the type of neglect criminalized by N.J.S.A. 2C:24-8(a). In answering that question, we agree with defendant that an assault – criminalized elsewhere in the criminal code – cannot constitute the neglect required by N.J.S.A. 2C:24-8(a).

A-2555-19

To explain, we start with the language of the statute itself. N.J.S.A. 2C:24-8(a) makes it a third-degree offense for a person, in the relationship defendant was in with Irene, to "abandon[]" or "unreasonably neglect[] to do or fail[] to permit to be done any act necessary for the physical or mental health" of the elderly person. The words describing the criminalized conduct – "abandon," "neglect," and "fail" – all connote an act of omission rather than an act of commission. Indeed, "abandon" is further defined in the statute as "willful desertion or forsaking" of the protected person, additional words connoting inaction. Ibid.

To accept the State's theory that a caretaker's assault of a protected person constitutes neglect, abandonment, desertion, or a failure to act, we would have to twist the Legislature's words beyond their plain meaning. Our role, however, is to construe, not distort. As the Supreme Court has explained, a court's role is not to "rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002). Statutes must instead be interpreted to "discern and effectuate" the legislative intent. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012). This requires consideration of the statute's plain language, which is best understood when its words are given

6 <span>A-2555-19</span>

"their ordinary meaning and significance." DiProspero v. Penn, 183 N.J. 477, 492 (2005).

In giving the verbs found in N.J.S.A. 2C:24-8(a) their ordinary meaning and significance, there is no doubt they do not encompass a caretaker's physical assault of the elderly person. This is not to suggest that our criminal code permits or condones what is alleged here. When the Legislature enacted N.J.S.A. 2C:24-8(a) it obviously understood that it did not need to criminalize a caretaker's assault of an elderly or disabled person because it had already done so. See N.J.S.A. 2C:12-1.

The State's theory was limited to its claim that defendant's alleged assault of Irene constituted the violation of N.J.S.A. 2C:24-8(a) charged in the indictment when the prosecutor argued that "striking an elderly person by itself by its very nature is neglect." We reject this and conclude that the assault alleged here cannot constitute a violation of N.J.S.A. 2C:24-8(a), and that the evidence presented at trial lacked support for a charge that defendant "abandon[ed] . . . or unreasonably neglect[ed] to do or fail[ed] to permit to be done any act necessary for the physical or mental health of" Irene.

The State, perhaps now recognizing the limits of N.J.S.A. 2C:24-8(a), attempts to recast the theory it presented to the jury. For the first time on appeal,

the State argues that the assault was a mere "factual predicate" to its theory that defendant's failure to take Irene for medical care the night of their argument constituted a gross deviation from the standard of care. Beyond the fact that this argument is not now cognizable because it was not raised in the trial court, State v. Robinson, 200 N.J. 1, 20 (2009), and because the argument is not consistent with the State's theory at trial and it would be unfair to defendant to now view the evidence in this new incarnation, State v. Witt, 223 N.J. 409, 419 (2015), there is simply no evidence in the record that Irene required medical attention that night; in fact, there was no dispute that the plan was to take Irene to a medical appointment the morning she walked out of the apartment.

Defendant lastly argues that the simple assault conviction must be reversed and that whether she committed a simple assault on Irene should be retried because the trial judge failed to clarify for the jury that defendant's claim of self-defense applied not only to the aggravated assault charge but also the lesser-included simple assault charge. The State agrees with this contention, as do we.

For these reasons, we reverse the judgment of conviction and remand for both a dismissal of the charge brought under N.J.S.A. 2C:24-8(a) and a new trial on the simple assault charge.

A-2555-19

Reversed and remanded.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2555-19