Justice SOLOMON,
concurring in part and dissenting in part.
The people of Bergen County adopted, by a 1985 referendum, the county executive form of government and, through a clear and unambiguous mandate, conferred upon their County Executive broad authority to manage county affairs. I join the majority’s holding that the County Executive had the authority to veto the provision of health benefits to the commissioners of the Northwest Bergen County Utilities Authority (the Authority). However, I cannot agree with the majority’s conclusions that the County Executive did not have the statutory authority under the Optional County Charter Law (the Charter Law), N.J.S.A. 40:41A-31 to -41, to veto compensation for commissioners and to remove them from office. I am compelled to dissent because “[i]t is not our function to rewrite a plainly written statute or to presume that the *455 Legislature meant something other than what it conveyed in its clearly expressed language.” Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592, 46 A.3d 1262 (2012) (citing DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)).
I.
In 1972, the Charter Law was passed by the Legislature and signed by the Governor, enabling voters to choose the form of county government they believe will be most efficient and cost effective. See N.J.S.A. 40:41A-26 (“The intent of this act is to enable a county that has adopted a charter pursuant to this act to cause any duty that has been mandated to it by the Legislature to be performed in the most efficient and expeditious manner[.]”).
The people of Bergen County specifically chose to have their county “governed by [the county executive plan], by the provisions of [the Charter Law] applicable to all optional plans, and by all general laws[.]” N.J.S.A. 40:41A-25. Recognizing that some of the newly adopted provisions under the Charter Law clashed with general laws, the Legislature directed that the Charter Law prevail over inconsistent provisions of a general law:
For the purposes of this act, a “general law” shall be deemed to be such law or part thereof, heretofore or hereafter enacted, that:
a. Is not inconsistent with this act; and
b. Is by its terms applicable to or available to all counties, or;
c. Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare.
[N.J.S.A. 40:41A-26 (emphasis added).]
Therefore, provisions of the Municipal and County Utilities Authorities Law, N.J.S.A. 40:14B-1 to -78 (MCUAL), as a general law, must yield if inconsistent with provisions of the Charter Law. At issue here are the differences between the MCUAL and the Charter Law regarding the scope of the County Executive’s veto and removal power.
*456 II.
A.
Beginning with the County Executive’s veto powers, under the Charter Law, the County Executive has discretion to veto within ten days of delivery “all or part of the minutes of every meeting of a county authority organized pursuant to the provisions of [the MCUAL].” N.J.S.A. 40:41A-37(h). By deliberately choosing the unambiguous language “all ... of the minutes of every meeting,” the Legislature unequivocally provided the County Executive with broad veto power. See O’Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002) (“Where a statute is clear and unambiguous on its face and admits of only one interpretation, a court must infer the Legislature’s intent from the statute’s plain meaning.” (citing V.C. v. M.J.B., 163 N.J. 200, 217, 748 A.2d 539, cert. denied, 531 U.S. 926, 121 S.Ct. 302, 148 L.Ed.2d 243 (2000))).
The majority cites N.J.S.A. 40:14B-17 of the MCUAL as a limitation on the County Executive’s veto power. That section allows the Board of Freeholders to pass a “resolution, ordinance or parallel ordinances for the creation of a municipal authority or for the reorganization of a sewerage authority as a municipal authority,” and to set forth the level of compensation for commissioners “within the limitations stated in such resolution, ordinance or parallel ordinances.” N.J.S.A. 40:14B-17 further provides that “[t]he said provisions or limitations stated in any such resolution, ordinance or parallel ordinances may be amended or added by subsequent resolution, ordinance or parallel ordinances, as the ease may be,” but may not “reduc[e] any such [compensation] ... as to any member of the municipal authority then in office except upon the written consent of such member.” N.J.S.A. 40:14B-17 (emphasis added).
My colleagues claim that N.J.S.A. 40:41A-37(h) of the Charter Law, describing the County Executive’s veto power, conflicts with N.J.S.A. 40:14B-17 of the MCUAL, but ignore the Legislature’s 2010 amendment to the MCUAL which confirmed the County *457 Executive’s broad powers to veto any action taken by the Authority. L. 2010, c. 52, § 3 (codified at N.J.S.A 40:14B-14(b)). Indeed, N.J.S.A 40:14B-14(b) of the MCUAL specifically provides that the minutes of every authority meeting are subject to veto by the County Executive:
The minutes of every meeting of an authority created by a county organized pursuant to the pi’ovisions of the “county executive plan” of the “Optional County Charter Law,” P.L.1972, c.154 (C.40:41A-1 et seq.)[1] shall be delivered by the end of the fifth business day following the meeting, except as otherwise provided in subsection d. of this section, by and under the certification of the secretary of the authority to the county executive. Except as otherwise provided in subsection d. of this section, no action taken at a meeting by the members of an authority shall be effective until approved by the county executive or until 10 days after the copy of the minutes shall have been delivered. If, within the 10-day period, the county executive returns to the authority and to the board of freeholders the copy of the minutes witk a veto of any action taken by the authority or any member thereof at a meeting, together with a written explanation of the reasons for his veto of the actioTi, that action shall be of no effect unless the board of freeholders overrides the veto of the action by a majority vote of its full membership within 10 days of the receipt of the veto action. The county executive may approve all or any part of an action taken at a meeting prior to the expiration of the 10-day period. If the county executive takes no action with respect to the minutes within the 10-day period, the minutes shall be deemed to be approved. The veto powers accorded under this subsection shall not affect in any way the covenants contained in the bond indentures of the authority, or any collective bargaining agreement or binding arbitration decisions affecting employees of the authority.
[ (Emphasis added).]
Nevertheless, the majority perceives a conflict between the Charter Law and MCUAL, and concludes that the Charter Law “must be harmonized with other more specific protective legislation such as N.J.S.A. 40:14B-17 [of the MCUAL],” ante at 452, 143 A.3d at 302, ignoring the Legislature’s 2010 amendment to the MCUAL reflected in N.J.S.A. 40:14B-14(b). Even if an inconsis *458 tency does exist, there is no basis for the majority to disobey our Legislature’s directive that the Charter Law prevail over inconsistent provisions of a general law, such as the MCUAL. N.J.S.A. 40:41A-26.
Furthermore, if it is assumed that the unambiguous language of the Charter Law does not resolve whether the County Executive possessed the power to veto authority minutes providing salaries to commissioners, it remains that: (1) the Legislature’s 2010 amendment to the MCUAL confirmed the County Executive’s broad powers to veto any action taken by the Authority, N.J.S.A. 40:14B-14(b);[2] (2) the Board of Freeholders passed a 1979 Resolution creating the Authority and establishing “annual” compensation only for the commissioners named in the Resolution; (3) the language of the Resolution specifically states that the stipends to the named commissioners terminated at the end of their respective terms; and (4) the Board did not pass a new resolution, ordinance, or parallel ordinance providing compensation for subsequently appointed Authority commissioners pursuant to N.J.S.A. 40:14B-14.
Still, the majority attempts to justify its conclusions regarding the County Executive’s power to veto stipends for commissioners by noting that prior County Executives never vetoed the Authority’s thirty-year-long practice of paying stipends to its commissioners. The majority also claims the Board of Freeholders condoned the Authority’s practice by not passing a subsequent resolution to alter that practice. As noted above, however, N.J.S.A. 40:14B-17 of the MCUAL places an affirmative obligation on the Board of Freeholders to pass a resolution, ordinance, or parallel ordinance outlining compensation for Authority commissioners. Plainly, the compensation scheme for the inaugural members of the Authority was to cease when their terms ended — there is no other “possible reading.” Therefore, subsequent commissioners’ compensation could not have enjoyed the purported protection of the MCUAL.
*459 B.
The majority’s decision to restrict the County Executive’s removal power is similarly mistaken. N.J.S.A. 40:41A-37(c) of the Charter Law provides that the County Executive “[m]ay, at his discretion, remove or suspend any official in the unclassified service of the county over whose office the county executive has power of appointment in accordance with the provisions of section [N.J.S.A. 40:41A-]87(b).” Since it is undisputed that “any official in the ‘unclassified service’ ” of the county includes the commissioners of the Authority,[3] and since the County Executive has the authority to appoint members of county commissions subject to the Freeholder Board’s advice and consent, N.J.S.A. 40:41A-37(b),[4] the County Executive has exclusive and discretionary power to remove commissioners of the Authority. N.J.S.A. 40:41A-37(c). As stated previously, this provision of the Charter Law trumps any inconsistency found in the MCUAL regarding removal of commissioners. N.J.S.A. 40:41A-26.
Nonetheless, if we, once again, consider the two statutes in an effort to “harmonize” them, the MCUAL provides that the “governing body”[5] may remove “a member of a municipal authority” for cause only:
*460 A member of a municipal authority may be removed only by the governing body by which he was appointed and only for inefficiency or neglect of duty or misconduct in office and after he shall have been given a copy of the charges against him and, not sooner than 10 days thereafter, had opportunity in person or by counsel to be heal'd thereon by such governing body.
[N.J.S.A. 40:14B-16.]
The majority relies upon the legislative history of N.J.S.A. 40:41A-30 to argue that N.J.S.A. 40:41A-37(c) of the Charter Law and N.J.S.A. 40:14B-16 of the MCUAL regarding removal of commissioners are not inconsistent. However, the Sponsor’s Statement for N.J.S.A. 40:41A-30 explains that N.J.S.A. 40:14B-16 applies when the Board of Freeholders seeks to purge members of a utilities authority by using its power to reorganize. Sponsor’s Statement to Senate Bill No. 1891 (1997). Here, the Authority is not being purged through reorganization[6] by the Board of Freeholders; seven of the nine commissioners are being terminated by the County Executive in the exercise of her authority under N.J.S.A. 40:41A-37(c) of the Charter Law. While both the MCUAL and the Charter Law speak to the removal of members of the Authority, the MCUAL’s allowance of removal of a commissioner only for cause cannot be reconciled with the broad, discretionary authority afforded to the County Executive under the Charter Law and must yield to N.J.S.A. 40:41A-26.
I concede that the County Executive’s removal power under the Charter Law is subject to the due process requirements of N.J.S.A. 40:41A-87(b) and that the County Executive’s authority to terminate the commissioners “effective immediately” is not found in the Charter Law:
a. [T]he board may, by a resolution of disapproval, adopted by a two-thirds vote of the whole number of the board, prevent the dismissal of certain employees under conditions as set forth in subsection b. of this section.
b. Suspensions will take effect immediately upon personal service of notice setting forth the order of suspension or dismissal. Dismissal or suspension for a definite term shall occur automatically in SO calendar days fi-om receipt of notice. But, if the officer or employee requests a public hearing on his dismissal or suspension for a definite term, no action beyond temporary suspension may be *461 taken until the individual to be suspended or dismissed is given a public hearing not less than 15 nor more than 30 days after personal service of written notice of contemplated action. A copy of such notice shall be filed with the clerk to the board of freeholders immediately upon service of notice to the individual to be suspended or dismissed. In the event that within 35 days of receiving such notice, the board shall pass by a two-thirds vote of the whole number of the board, a resolution of disapproval, all proceedings and any suspension or dismissal of the individual shall be voided.
If, however, the suspension or dismissal order shall allege that the individual against whom action is contemplated or pending has committed a criminal act in the conduct of his public trust, no resolution of the board shall stay proceedings and the matter shall be brought to a public hearing in the manner prescribed above. If at that healing probable cause for prosecution is found, all evidence shall immediately be forwarded to the county prosecutor for further action.
[N.J.S.A. 40:41A-87(a), (b) (emphasis added).]
However, contrary to the majority’s conclusion that the dismissed commissioners were denied their right to a public hearing, N.J.S.A. 40:41A-87(b) requires a public hearing if requested, or “the suspension or dismissal order ... allege[s] that the individual against whom action is contemplated or pending has committed a criminal act in the conduct of his public trust.” (Emphasis added). That is not the case here, where the dismissals were not premised upon “a criminal act” by commissioners in the conduct of their “public trust.”
Furthermore, all seven commissioners in this matter were personally notified of the County Executive’s termination decision by mail on April 16, 2012. Thereafter, no commissioner sought relief from the County Executive’s action in accordance with the appeals process provided by the Charter Law, N.J.S.A. 40:41A-87(b), which states that “[dismissal or suspension for a definite term shall occur automatically in 30 calendar days” unless the dismissed or suspended officer or employee requests a public hearing after receipt of notice, or the Board of Freeholders, by a two-thirds vote, vetoes the suspension or removal before or after the hearing.
The dismissed commissioners never requested a public hearing, and nothing in the record indicates that the commissioners re *462 quested intervention by the Board of Freeholders. Instead, the Authority — not the dismissed commissioners — filed a complaint in lieu of prerogative writ with the Superior Court seeking review of the County Executive’s termination action. Therefore, the commissioners failed to satisfy the procedural requirements of N.J.S.A. 40:41A-87 and, hence, their termination was final thirty calendar days after the commissioners received notice of their termination by mail on April 16, 2012. Accordingly, the County Executive properly exercised her statutory right to remove the seven commissioners of the Authority.
III.
As the majority correctly points out, this Court has a duty to “harmonize the provisions of all statutes that the Legislature has enacted for implementation affecting the subjects involved.” Ante at 444, 143 A.3d at 297. However, that duty does not permit this Court to ignore a clear legislative directive. In light of the unambiguous command by the Legislature, the MCUAL must give way to the Charter Law in cases of conflict. There is no basis for the conclusion “that the Legislature intended for its two statutory schemes — the Charter Law and the MCUAL — to generally work harmoniously, not in conflict with one another” and, therefore, I concur in part, and dissent in part.

 Although the Authority was "created" before Bergen County adopted the county executive plan, the Sponsor's unqualified Statement to the bill evidences that N.J.S.A. 40:14B-14(b) is applicable to all counties "organized” under the "Optional County Charter Law”: "This Bill gives the county executives in counties organized pursuant to the provisions of the 'Optional County Charter Law' ... the power to review and approve or veto, within 10 days of delivery, all or part of the minutes of every meeting of ... any county utilities organized pursuant to the provisions of [the MCUAL]." Sponsor’s Statement to Assembly No. 162 (1995).

 The majority agrees that the County Executive's veto is valid as to health benefits provided to commissioners.

 Under N.J.A.C. 4A:3-1.3(a)(4), an official is in "unclassified service" when "[a] specific statute provides that incumbents in the title serve for a fixed term or at the pleasure of the appointing authority]].]” The Authority commissioners here are officials in the "unclassified service" of the county because they serve at the pleasure of the County Executive. See N.J.S.A. 40:41A-37(b) (granting County Executive authority to appoint "members of ... authorities"); see also N.J.S.A. 40:41A-37(c) (granting County Executive discretionary authority to remove Authority commissioners).

 The majority concedes that the County Executive has the appointment power over commission members. See also N.J.S.A. 40:41A-37(b) (stating that the County Executive, "[w]ith the advice and consent of the board, shall appoint ... the members of all county boards, commissions and authorities").

 Under both the Charter Law and the MCUAL, "governing body" is defined as both the Board of Freeholders and the County Executive. N.J.S.A. 40:14B-3(3); N.J.S.A. 40:41A-32(b).

 There was no hearing conducted and no record established in this regard.