**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1283-22

IN THE MATTER OF THE
AMENDED AND RESTATED
CARLOS HERNANDEZ
REVOCABLE TRUST DATED
OCTOBER 22, 2018, AS
AMENDED ON JUNE 30, 2020.

_____

Argued October 30, 2023 – Decided November 16, 2023

Before Judges Mawla and Chase

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000108-22.

Mario M. Blanch argued the cause for appellant Blanch Family Trust (Blanch Legal, attorneys; Mario M. Blanch, on the brief).

Andrew J. Cevasco argued the cause for respondent (Archer & Greiner, P.C., attorneys; Andrew J. Cevasco, of counsel and on the brief; Lilli B. Wofsy, on the brief).

Respondents Carlene Hernandez, Donna Hernandez, David Hernandez, Laura Hernandez, Carlos Hernandez Revocable Trust, and Stuart Reiser have not filed a brief.

PER CURIAM

In this appeal, we are asked to deny a court-appointed trustee payment for services rendered where a co-trustee alleged a potential conflict, and the trustee voluntarily resigned. Following our review of the record and the applicable legal principles, we affirm the trial court's decision to award the trustee his earned fees.

I.

In February 2021, Carlos Hernandez ("Decedent") died testate, leaving behind six children by three different women. With his wife Donna Hernandez, he had David Hernandez, Carlene Hernandez, and Laura Hernandez; with Rosa Blanch, he had Mario Blanch and Tanya Blanch; and with Esther Simancas, he had Ramsy Hernandez. Esther[1] was named as executrix of the estate.

Article III of Decedent's will directed his residuary estate to pour over into the Carlos Hernandez Revocable Trust ("CHRT"). The CHRT trust agreement appointed Carlene and Mario as co-trustees. After expenses were paid and specific bequests were made, the balance of the CHRT corpus was to be paid "in equal shares" to two sub-trusts: the Donna Hernandez Family Trust ("Donna

---

[1] Because many of the parties and the trusts share the same or similar surnames, we use first names as identifiers throughout this opinion, intending no disrespect.

A-1283-22

Trust") and the Blanch Family Trust ("Blanch Trust"). The CHRT trust agreement also included a detailed in terrorem clause and related safe harbor provision.

The CHRT trust agreement appointed Carlene trustee of the Donna Trust and Mario trustee of the Blanch Trust. The trust agreement made a specific bequest to the Donna Trust of a corporation, Martez, Inc., owner of three properties in Bergen County. It also made a specific bequest to the Blanch Trust of 1215-1217 26th Street Investment, LLC, owner of a property in North Bergen ("26th Street property").

Co-trusteeship of CHRT by Mario and Carlene proved to be contentious, as legal disputes arose over ownership interests in the bequeathed properties. David and Carlene filed suit ("Law Division action") against Esther as executrix of their father's estate and the corporate entities that owned the real properties listed in the CHRT trust agreement, including the 26th Street property. In the Law Division action, David was represented by Bressler, Amery & Ross, PC ("Bressler"), while Carlene was represented separately by Cole Schotz, PC ("Cole"). Carlene eventually dismissed her claims in the Law Division. David, still represented by Bressler, did not dismiss his claims in the Law Division.

 A-1283-22

Carlene, still represented by Cole, initiated a second suit in the Probate Part ("Probate action") against Mario as co-trustee of the CHRT via verified complaint, alleging Mario's "actions and omissions [were] threatening the proper administration of" the CHRT. Carlene filed an amended verified complaint and order to show cause, asking the court to appoint an additional trustee or special fiduciary pursuant to N.J.S.A. 3B:31-49(e). Mario answered Carlene's amended complaint and raised a counterclaim on behalf of the trust, invoking the in terrorem clause against Carlene for both the Probate action and the Law Division action. Donna and David, through Bressler, answered Carlene's amended complaint in the Probate action and raised a crossclaim against Mario.

On June 16, 2022, the trial court entered an order which, among other things, appointed respondent Andrew Cevasco ("Cevasco") of Archer & Greiner, P.C. ("Archer") to serve as a third co-trustee of CHRT alongside Carlene and Mario. The order also transferred the Law Division action to be heard as a companion case to the Probate action.

In October 2022, Mario emailed Cevasco after discovering Archer was represented by Bressler in an unrelated malpractice action in Atlantic County. Mario claimed Bressler's representation of David in the Law Division action and

4

both David and Donna in the crossclaims against him in the Probate action, along with its representation of Archer in the malpractice suit, created a conflict of interest for Cevasco. Cevasco replied that the malpractice matter had not come up on his firm's internal conflict check and he did not believe the malpractice suit had any "bearing on [Cevasco's] service as [t]rustee . . . ."

In his purported capacity as co-trustee of CHRT, Mario filed an order to show cause to remove Cevasco. Mario cited the alleged conflict of interest and enumerated several actions he believed Cevasco took in favor of Carlene and the Donna Trust and against the Blanch Trust.

Mario and Carlene entered into a settlement agreement in which Carlene agreed to dismiss the Probate action and Mario agreed to dismiss his counterclaim. As part of the settlement agreement, Cevasco agreed to voluntarily resign as trustee so the court could appoint another co-trustee. The trial court entered a consent order approving settlement between Carlene and Mario and appointing a new third co-trustee to replace Cevasco.

After resigning as co-trustee, Cevasco filed a certification of services seeking fees for his work totaling $40,162.50. Cevasco detailed his work reviewing the corporate entities' financial records, addressing and resolving issues related to the in terrorem clause, investigating tax returns filed on behalf

5

of the companies, researching and retaining local counsel to defend the trust in a suit Esther had filed in Florida, hiring a management company for Martez, Inc., and participating in settlement proceedings. Cevasco attached a detailed invoice to support his certification. He also certified as to his professional skills and experience, including having practiced in estate planning and probate litigation for over thirty-five years, holding both a J.D. and L.L.M. in Taxation, serving on bar association committees related to probate and estate law, and lecturing on the same. He certified that the time spent and rates charged were "reasonable and customary" for other Bergen County attorneys in similar matters. Mario filed an objection to Cevasco's fees, incorporating by reference the same factual recitations from his earlier order to show cause for Cevasco's removal.

On December 22, 2022, the court entered an order awarding Cevasco a fee in the amount requested. In an accompanying written opinion, the court noted Cevasco's compensation was anticipated by the June 16, 2022 order, and under Rendine v. Pantzer, 141 N.J. 292, 317 (1995), and Furst v. Einstein Moomjy, 182 N.J. 1 (2004), Cevasco's fees were "consistent with attorneys of comparable experience who practice on a regular basis in Bergen County[,]" and "the time expended . . . was reasonable." The court found Cevasco had not exceeded the

scope of his court appointment as contemplated in the June 16 order. Further, the court rejected Mario's argument as to the alleged conflict, finding Cevasco was unaware of Bressler's involvement in the malpractice action and Cevasco "acted impartially and in good faith in connection with the terms of the Revocable Trust."

This appeal followed. Mario raises two points for our consideration:

I.   AS A PUBLIC POLICY MATTER[,] A TRUSTEE SHOULD NOT EARN A LEGAL FEE WHERE THEY ENGAGED IN A CONFLICT OF INTEREST WHETHER SAME WAS KNOWN OR UNKNOWN.

II.   THE FEE GRANTED BY THE TRIAL COURT, WITHOUT A HEARING, IS UNREASONABLE ON ITS FACE AND DOES NOT MEET THE LODESTAR.

II.

"[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). Judicial findings of fact are binding on appeal when supported by "adequate, substantial, and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 483-84 (1974); see also Marino v. Marino, 200 N.J. 315, 334 (2009) (holding

7

the trial court's factual findings were entitled to deference because they were "supported by sufficient credible evidence in the record ").

Mario maintains Cevasco's purported conflict of interest requires forfeiture or alternatively, reduction, of his fees for serving as an appointed trustee. He argues Cevasco had a conflict of interest because: Bressler represented David in the Law Division action; Bressler represented David and Donna in their crossclaims in the Probate action; and also represented Archer in the malpractice action. Mario maintains Cevasco's conduct violated the Rules of Professional Conduct governing judicial appointments and conflicts of interest, namely RPCs 6.2(a), 1.10, and 1.16. He acknowledges there is no binding precedent in New Jersey to support his position but maintains the fees should be denied "as a public policy matter" whether the conflict of interest "was known or unknown."

A court's discretionary power to reduce or deny trustee compensation is derived from New Jersey's Uniform Trust Code. When interpreting a statute, a reviewing court's "paramount goal" is to give effect to the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). "[G]enerally, the best indicator of that intent is the statutory language." Ibid. (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). A statutory provision should be read "in context with

related provisions so as to give sense to the legislation as a whole . . . ." Ibid. (citing Chasin v. Montclair State Univ., 159 N.J. 418, 426-27(1999)).

The Uniform Trust Code provides, in pertinent part: "(a) A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust[;] (b) To remedy a breach of trust that has occurred or may occur, the court may . . . reduce or deny compensation to the trustee . . . ." N.J.S.A. 3B:31-71. The trustee's liability to the beneficiaries is limited to the greater of the loss in value of the trust property and distributions due to the breach, or the profit the trustee made. N.J.S.A. 3B:31-72(a). A claim for damages must be supported by adequate proof. See Matter of Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 177 (App. Div. 2021), certif. denied, 251 N.J. 380 (2022) (upholding a trial court's discretionary denial of damages where plaintiff's claim for consequential damages was deemed speculative, and no clear and convincing evidence of actual malice was presented to support punitive damages).

The Legislature enacted N.J.S.A. 3B:31-72, adopting virtually identical language to Section 1001 of the Uniform Trust Code. The comments to Section 1001 of the Uniform Trust Code provide:

> In deciding whether to reduce or deny a trustee compensation, the court may wish to consider (1) whether the trustee acted in good faith; (2) whether the breach of trust was intentional; (3) the nature of the

breach and the extent of the loss; (4) whether the trustee has restored the loss; and (5) the value of the trustee's services to the trust.

[Unif. Tr. Code § 1001 (Unif. L. Comm'n 2000) (citing Restatement (Second) of Trusts § 243 cmt. c (Am. Law Inst. 1959)).]

Read together, these provisions indicate the court's remedial powers are to be invoked only where it has been established that a breach has occurred or may occur. They also indicate that reduction or denial of fees is not appropriate where there the has been no showing of a resulting loss to the trust.

Mario asks us to expand the circumstances under which the court may exercise its discretionary remedial powers to include those where a violation of the Rules of Professional Conduct has been alleged but not proven. Further, he makes this request without any evidentiary support that, in this case, CHRT suffered any harm because of Cevasco's alleged conflict. There is nothing in the plain text of the statute or the model legislation it incorporates to suggest the Legislature intended to adopt a more expansive approach than what is provided by its plain language.

### III.

Mario also argues Cevasco exceeded the scope of his trusteeship by taking ultra vires actions with respect to the management of the properties. He claims

Cevasco improperly took "legal positions" on whether he was required to drop the counterclaim he unilaterally brought against Carlene on behalf of CHRT.

As we noted, the trial court granted Cevasco's fees after considering his certification, his skills and experience, the detailed billing invoice he submitted, and the terms of his appointment. The court found the role of co-trustee required Cevasco to "become involved in numerous matters as to which [Carlene] and [Mario] could not reach consensus." It rejected Mario's assertion that Cevasco's conduct was beyond the scope of his appointment. The court found Cevasco had acted "impartially and in good faith in connection with the terms of the Revocable Trust." As the trial court noted, the only decision Cevasco made as trustee that affected the Bressler clients in any way was to vote against David's interests by voting to enforce the in terrorem clause against him. Mario has presented no evidence of Cevasco personally benefitting from the decisions he made as trustee, of the trust's corpus being harmed by Cevasco's actions, or of Cevasco placing self-interest ahead of the interests of the trust.

Cevasco filed a detailed certification and billing statement in support of his application. Mario raised no factual disputes as to whether Cevasco performed any of the work described, only legal disputes as to whether the work was compromised by the alleged conflict of interest or otherwise beyond the

11

scope of the trusteeship. Therefore, the court was within its power to render a fair decision without conducting an evidentiary hearing.

Given the trial court's well-reasoned conclusions and the deferential standards applying to findings of fact and the award of fees, there is no basis to conclude the trial court abused its discretion in awarding Cevasco's fees in their entirety. To the extent we have not specifically addressed any other contentions raised by Mario, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION