# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1452-24

IN THE MATTER OF THE
CIVIL COMMITMENT OF
L.M., SVP-811-19.

_____

Submitted December 3, 2025 – Decided April 22, 2026

Before Judges Gummer, Paganelli, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-811-19.

Jennifer N. Sellitti, Public Defender, attorney for appellant L.M. (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent State of New Jersey (Sookie Bae-Park, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

PER CURIAM

L.M. appeals from a judgment continuing his involuntary civil commitment under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-

27.24 to 27.38.[1]  He contends the court violated his statutory and due-process rights by conducting a virtual hearing and erred in concluding the State had proven he met the criteria for continued civil commitment.  Unpersuaded by those arguments, we affirm.

I.

In 2001, L.M. pleaded guilty to third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), specifically, by "engaging in sexual conduct which would impair or debauch the morals of . . . the child."  At the plea hearing, he took full responsibility for an incident in which he exposed his penis to an eight-year-old girl who then touched it.  For that crime, L.M. was sentenced to a four-year term of imprisonment and community supervision for life.

In 2016, L.M. pleaded guilty to second-degree and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4, and fourth-degree violation of parole, N.J.S.A. 2C:43-6.4(d).  During the plea hearing, L.M. admitted that on various dates he knowingly had caused a thirteen- to fourteen-year-old girl to photograph herself engaging in a prohibited act and he intended that act to be photographed.

---

[1]  We use initials to refer to L.M. because records relating to civil commitment proceedings are confidential.  R. 1:38-3(f)(2).

2

In 2019, the State successfully petitioned to have L.M. civilly committed pursuant to the SVPA.  We affirmed the judgment granting the State's petition. See  In re Civ. Commitment of L.M.,  No. A-0059-21 (App. Div. Feb. 3, 2023) (slip op. at 18), certif. denied, 254 N.J. 70 (2023).

An annual review hearing pursuant to N.J.S.A. 30:4-27.35 regarding L.M.'s continued commitment was scheduled to take place virtually on December 17, 2024.  The virtual format was consistent with the Supreme Court's October 27, 2022 order and a November 29, 2023 Notice to the Bar.  See Sup. Ct. of N.J., Order:  The Future of Court Operations - Updates to In-Person and Virtual Court Events ¶ 4(b) (Oct. 27, 2022) (directing trial courts to conduct "[i]nvoluntary inpatient commitment review hearings" virtually "[a]bsent an individualized reason to proceed in person based on the facts and circumstances of the case"); Sup. Ct. of N.J., Notice to the Bar:  Criminal-- Presumptive Formats For Sexually-Violent Predator ("SVP") Act Hearings at 1 (Nov. 29, 2023) (confirming trial courts would conduct "subsequent periodic review hearings" under the SVPA "virtually absent an individualized reason to proceed in person, as determined by the judge").

On December 10, 2024, L.M.'s counsel requested the hearing be conducted in-person based on an "apparent change in court policy pertaining to

3

A-1452-24

in person annual SVPA review hearings" he had read about in a "newspaper article." On December 11, 2024, court staff advised counsel the court had denied his request "due to the short notice provided in requesting an in-person hearing." On December 12, 2024, L.M.'s counsel submitted a request the "hearing be adjourned to the soonest possible date when an in person hearing can be accommodated by the court." The State objected to the request, noting expert witnesses would have to conduct fresh interviews and prepare new reports if the court adjourned the hearing. In response, L.M.'s counsel offered to waive any objection to the timeliness of the State's experts' reports. The State declined that offer, contending submission of stale reports was detrimental to the State's position.

Court staff advised counsel the court had "not received any updated directives from the" Administrative Office of the Courts and that "[t]he decision to hold an in-person annual review hearing remain[ed] up to the discretion of the assigned judge based on an individualized reason to proceed in person, taking into account the specific circumstances of the case." Court staff informed counsel the judge assigned to conduct the hearing had denied the request but asked if counsel had "a specific circumstance" he wanted to include in his request for an in-person hearing. Counsel responded that he "d[id] not have any

4

particular circumstance specific to" L.M.

The hearing proceeded virtually on December 17, 2024. The State submitted the report and testimony of Dr. Dean DeCrisce, an expert in psychiatry. Dr. DeCrisce's testimony was based on his review of L.M.'s records. L.M. had refused to meet with him.

Dr. DeCrisce testified L.M. had made little to no significant gains in his sex-offender treatment while he had been committed. According to Dr. DeCrisce, L.M. had presented low motivation to participate in treatment sessions and had refused treatment after three months. Dr. DeCrisce diagnosed L.M. with pedophilic disorder, "unspecified personality disorder with antisocial and possibly avoidant personality traits," alcohol-use disorder, and cannabis-use disorder. He opined those diagnoses predisposed L.M. to commit acts of sexual violence and tended not to spontaneously remit, reenforcing the need for further treatment. Dr. DeCrisce testified L.M. had displayed several characteristics that contributed to a high risk of sexual re-offense, including multiple offenses despite prior sanction, early age of offending, poor relationship history, noncontact offending, unrelated victims, social skills deficits, poor cooperation with supervision, evidence for deviant arousal, untreated substance use issues, emotional identification with children, and poor problem-solving skills. The

5

doctor's testimony was unrefuted. L.M. did not testify or present any witnesses.

On December 18, 2024, the court placed its decision on the record and entered a judgment continuing L.M.'s commitment. The court found Dr. DeCrisce credible and concluded the State had proven by clear and convincing evidence L.M. had been convicted of a sexually-violent offense as defined under the SVPA; he continued to suffer from a mental abnormality or personality disorder; and, as a result of that abnormality or disorder, it was highly likely he would not control his sexually-violent behavior and would reoffend if released.

On appeal, L.M. raises the following arguments:

> POINT I
>
> THE MATTER MUST BE REMANDED TO CONDUCT THE COMMITMENT HEARING ANEW BECAUSE L.M. WAS DENIED HIS RIGHT TO AN IN-PERSON HEARING UNDER THE SVPA.
>
> POINT II
>
> THE TRIAL COURT ERRED WHEN IT FOUND THAT THE STATE HAD PROVED BY CLEAR AND CONVIN[C]ING EVIDENCE THAT THE RESIDENT MET THE CRITERIA FOR CONTINUED CIVIL COMMITMENT AS A SEXUALLY VIOLENT PREDATOR.

Because the court did not violate L.M.'s statutory or due-process rights by conducting the hearing virtually pursuant to the Supreme Court's order and did

6

not err or abuse its discretion in finding the State had proven L.M. met the criteria for continued civil commitment, we affirm.

## II.

The Legislature's purpose in enacting the SVPA was "to protect other members of society from the danger posed by sexually violent predators." In re Commitment of J.M.B., 197 N.J. 563, 570-71 (2009) (citing N.J.S.A. 30:4-27.25). Pursuant to the SVPA, "[a]n involuntary civil commitment can follow service of a sentence, or other criminal disposition, when the offender 'suffers from a mental abnormality or personality disorder that makes the person [highly] likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.'" In re Civ. Commitment of A.Y., 458 N.J. Super. 147, 154 (App. Div. 2019) (quoting N.J.S.A. 30:4-27.26); see also N.J.S.A. 30:4-27.25 and -27.28(c). To civilly commit someone under the SVPA as a sexually violent predator, the State must prove by clear and convincing evidence:

> (1) that the individual has been convicted of a sexually violent offense, [N.J.S.A. 30:4-27.26]; (2) that he suffers from a mental abnormality or personality disorder, . . . ; and (3) that as a result of his psychiatric abnormality or disorder, "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend[.]"

[In re Civ. Commitment of R.F., 217 N.J. 152, 173 (2014) (citation omitted) (quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)); see also In re P.D., 243 N.J. 553, 566 (2020).]

Our review of a judgment for commitment under the SVPA is "extremely narrow." R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). "We give deference to the findings of our trial judges because they have the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Moreover, "[t]he judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" Ibid. (quoting In re Civ. Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).

Accordingly, a SVPA judge's determination either to commit or release an individual is accorded substantial deference and should not be modified by an appellate court "unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58). Thus, "[s]o long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." Ibid. (quoting Johnson, 42 N.J. at 162); see also J.M.B., 197 N.J. at 597.

A-1452-24

## A.

L.M. argues we "should abrogate the requirement that a committee proffer an 'individualized reason' to appear in person" because "[a] simple request for an in-person hearing should suffice." L.M. effectively asks us to vacate the Supreme Court's October 27, 2022 order, which expressly directs trial courts to conduct "[i]nvoluntary inpatient commitment review hearings" virtually "[a]bsent an individualized reason to proceed in person based on the facts and circumstances of the case." Sup. Ct. of N.J., Order: The Future of Court Operations - Updates to In-Person and Virtual Court Events ¶ 4(b) (Oct. 27, 2022). As an intermediate appellate court, this court does not have the authority to abrogate a Supreme Court order. See Pannucci v. Edgewood Park Senior Hous. – Phase 1, LLC, 465 N.J. Super. 403, 414 (App. Div. 2020) ("[Plaintiff] asks us to change the law the Supreme Court has established. That, we may not do . . . . It is not our role 'to alter a rule solidly supported by the courts of last resort.'" (quoting Orlik v. De Almeida, 45 N.J. Super. 403, 409 (App. Div. 1957))).

The "[Supreme] Court has the constitutional authority to make rules and procedures for all courts of this state." State v. Vega-Larregui, 246 N.J. 94, 103 (2021); see also N.J. Const. art. VI, § 2, ¶ 3. "The Chief Justice . . . shall be the

9

administrative head of all the courts in the State . . . ." N.J. Const. art. VI § 7, ¶ 1. These "two provisions give the Chief Justice and the Supreme Court sweeping authority to govern their own house." In re P.L. 2001, Chapter 362, 186 N.J. 368, 379 (2006). The "Court's administrative authority is 'far-reaching' and 'encompasses the entire judicial structure [as well as] all aspects and incidents related to the justice system.'" Vega-Larregui, 246 N.J. at 123 (alteration in original) (quoting In re P.L. 2001, 186 N.J. at 381). "Because of the constitutional power Article VI vests in the Supreme Court, [the Court's] 'administrative rulemaking authority cannot be circumscribed by legislation.'" Ibid. (quoting In re P.L. 2001, 186 N.J. at 381).

Nevertheless, L.M. contends he had a statutory right to an in-person annual review hearing, citing the following provisions of the SVPA:

> A person subject to involuntary commitment as a sexually violent predator has the following rights at a court hearing pursuant to [N.J.S.A. 30:4-27.30] and any subsequent review court hearing:
>
>    . . . .
>
> b. The right to be present at the court hearing unless the court determines that because of the person's conduct at the court hearing the proceeding cannot reasonably continue while the person is present[.]
>
> [N.J.S.A. 30:4-27.31.]

L.M. asserts "[t]he right to be present" means physically present.

Considering that argument, we apply well-established principles of statutory construction. In interpreting a statute, we "determine and give effect to the Legislature's intent." In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). We "begin[] with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). We may not "engage in conjecture." DiProspero, 183 N.J. at 492 (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980)). "[J]ust as reviewing courts should not ignore the words the Legislature chose to include in a statute, nor should they add language the Legislature chose not to include." State v. C.C.W., 481 N.J. Super. 551, 572 (App. Div. 2025).

And that's what L.M. asks us to do; he asks us to interject the word "physically" into the phrase "[t]he right to be present," assuming that is what the

Legislature meant. But the Legislature did not define "present" in N.J.S.A. 30:4-27.31 or in the SVPA's definition section, N.J.S.A. 30:4-27.26. It did not expressly require an in-person appearance nor expressly prohibit a virtual appearance. We decline to "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment." DiProspero, 183 N.J. at 492 (quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952)).

We also perceive no due-process violation. "Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Thomas Makuch, LLC v. Twp. of Jackson, 476 N.J. Super. 169, 187 (App. Div. 2023). L.M. had that opportunity. See State Farm Guar. Ins. Co. v. Hereford Ins. Co., 454 N.J. Super. 1, 9 (App. Div. 2018) (holding "a telephonic hearing will afford the parties the opportunity to be heard, present evidence, [and] cross-examine witnesses"). His speculation about what could happen in a virtual hearing does not demonstrate he was deprived of any due-process rights in the hearing conducted in this case. See Vega-Larregui, 246 N.J. at 132-33 (rejecting defendant's "hypothetical" concerns about virtual grand-jury proceedings).

B.

L.M. does not dispute the court's conclusion the State demonstrated he committed a predicate offense under the SVPA, thereby meeting the first required element for commitment. See R.F., 217 N.J. at 173-74. Instead, he challenges the court's findings under the second and third elements: he suffers from a mental abnormality or personality disorder, and it is highly likely, as a result, he will not control his sexually-violent behavior and will reoffend. See id. at 173.

Under the second required element, the State must prove the individual "suffers from a mental abnormality or personality disorder." Ibid. The SVPA defines a "[m]ental abnormality" as "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." N.J.S.A. 30:4-27.26.

Although the SVPA does not define "personality disorder," "the nomenclature . . . is not dispositive." W.Z., 173 N.J. at 127. What matters is that "the mental condition . . . affect[s] an individual's ability to control his or her sexually harmful conduct." Ibid. It is "not necessary that an individual have a sexual compulsion, such as paraphilia, or a complete or total loss of control over his or her behavior to be deemed a sexually violent predator under the

13

SVPA." A.Y., 458 N.J. Super. at 167; see also W.Z., 173 N.J. at 129 ("[T]he diagnosis of each sexually violent predator susceptible to civil commitment need not include a diagnosis of 'sexual compulsion.'").

L.M. challenges Dr. DeCrisce's pedophilic-disorder diagnosis. He does not challenge his other diagnoses. As the fact-finder in a bench trial, "the weight to be given to the evidence of experts is within the competence of the [court]," and it is within the court's discretion to accept or reject an expert's opinion after carefully considering the evidence before the court. LaBracio Fam. P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001). "[A] mere disagreement with the trial court's factfindings cannot be the basis for substituted factfindings by an appellate court" absent a clear mistake. R.F., 217 N.J. at 178; see also In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997) ("[A]n appellate court should exercise its original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter." (quoting Rova Farms Resort, Inc. v. Invrs. Ins. Co. of Am., 65 N.J. 474, 484 (1974))). Applying that standard, we see no basis to disregard the court's finding regarding the credibility of Dr. DeCrisce's testimony and the weight it gave to that testimony.

A-1452-24

Under the third required element, the State must prove "that as a result of his psychiatric abnormality or disorder, 'it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend[.]'" R.F., 217 N.J. at 173 (quoting W.Z., 173 N.J. at 130). "'Likely to engage in acts of sexual violence' means the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others." N.J.S.A. 30:4-27.26. "The final decision whether a person previously convicted of a sexually violent offense is highly likely to sexually reoffend 'lies with the courts, not the expertise of psychiatrists and psychologists. Courts must balance society's interest in protection from harmful conduct against the individual's interest in personal liberty and autonomy.'" A.Y., 458 N.J. Super. at 167 (quoting R.F., 217 N.J. at 174).

The court found that as a result of his mental abnormality or personality disorder, it is highly likely L.M. would not control his sexually-violent behavior and would reoffend if released. That conclusion was supported by sufficient credible evidence in the record, including unrebutted, credible expert testimony. We discern no abuse of discretion in the court's ruling.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15

A-1452-24